**The UNITED STATES**

v.

**Hilmer Burdette SANDINI, Ernest G. Rockwell, George White Kost, Ronald Paul Urban, Carol Ann Hineman Sandini, Sandra Jean Sandini, Michael Frawley, David Thompson, George Strickler, Sherman John Glunt, Santos Ruiz, Robert Kotula, Eugene Anthony Gesuale, Robert Maker, Vincent Ciraolo, Richard Moody, Edward Mills, Rex Foster, Kenneth Hill, Harry Jessup, Rose Jessup.**

**Appeal of Richard MOODY.**

**No. 86–3283.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Sept. 30, 1986.

Decided Oct. 16, 1986.

Rehearing and Rehearing En Banc Denied Nov. 10, 1986.

Jon A. Sale, Ira N. Loewy, Bierman, Sonnett, Shohat & Sale, P.A., Miami, Fla., for appellant.

J. Alan Johnson, U.S. Atty., Constance M. Bowden, Asst. U.S. Atty., Pittsburgh, Pa., for appellee.

Before WEIS, MANSMANN, and HUNTER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

On June 27, 1985, in the United States District Court for the Western District of Pennsylvania, appellant Richard Moody was charged in four counts of a 23 count indictment with conspiracy to import marijuana in violation of 21 U.S.C. § 963, conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846, importation of marijuana in violation of 21 U.S.C. § 952(a), and possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The same indictment charged a number of defendants, including Hilmer Sandini, one of Moody's conconspirators, in a large-scale cocaine trafficking conspiracy. Prior to trial, Moody filed a Motion for Severance and Relief from Prejudicial Joinder, arguing that the marijuana conspiracy was entirely separate from the cocaine conspiracy, and that joinder could not be justified by the mere fact that Moody's coconspirator Sandini was alleged to be a participant in both conspiracies.

Moody also argued that joinder was prejudicial as to him because the introduction of evidence concerning the cocaine conspiracy at his trial would deprive him of a fair opportunity to have the jury determine his guilt or innocence on the marijuana charges. The trial court agreed, and on August 27, 1985, entered an Order of Severance. Moody's trial commenced on December 18, 1985, and the jury returned verdicts of guilty on all four counts on December 20, 1985. On April 24, 1986, Moody was sentenced to concurrent terms of imprisonment of 360 days on each count, to be followed by a special parole term of two years. He was also fined on all four counts a total of $16,000. This appeal, in which Moody challenges (a) the admission of allegedly prejudicial evidence at trial and (b) improper venue, followed.

According to the testimony, Moody was a member of a marijuana trafficking conspiracy led by indicted coconspirator Ed Mills. Moody supplied the airplane, a Cessna 401, used in the group's importation of marijuana into the United States, and provided partial financing for the purchase of the marijuana. The Mills group started business in 1981. They planned to purchase marijuana in Jamaica, fly the marijuana from there to the Bahamas, and ship it from there by boat to Florida. This trip was attempted for the first time in 1982. Moody's plane was used to move the contraband from Jamaica to the Bahamas. The load was then lost because Mills failed to arrange for boats to carry the drugs from the Bahamas to Florida. Shortly thereafter, a second trip was planned, for which Moody supplied $15,000 for the drug purchase as well as his airplane. This mission also failed. Moody again agreed to supply $15,000 and the use of this airplane for a third importation effort, and this time his partners promised him $60,000 for the use of the plane and ⅓ of the balance of all profits to compensate him for his previous investments.

Around the same time that the Mills group was planning its third marijuana run from Jamaica, the members of the conspiracy met with Hilmer Sandini and his associate Dan Mitrione at the Clock Restaurant in Florida. The meeting's participants discussed the marijuana importation scheme; a proposal by Sandini that members of the Mills group become involved in his cocaine importation scheme; the possible use by Sandini of Moody's Cessna 401; and the possible use by Mills of Sandini's Cessna 411. Moody, though present, may not have actively participated in any of these conversations. After several more meetings with the Mills group, Sandini learned that neither Moody nor any of his coconspirators was interested in the cocaine venture. Sandini was also rebuffed in his offer to broker the marijuana haul once it arrived in Florida.

Sandini finally became involved in the marijuana importation scheme when the Mills group used his plane instead of Moody's to make the third run from Jamaica. Sandini rented the plane to the Mills group for $30,000, demanding that $15,000 be paid when the plane took off from Boca Raton Airport, and $15,000 when it returned. Moody brought the first $15,000, in cash, to the Boca Raton Airport and delivered it to one of his coconspirators, who later passed it on to Sandini.

The third trip from Jamaica was a success. Sandini was fully paid for the use of his airplane upon the marijuana's arrival into the United States. The Mills group immediately sold $50,000 worth of the marijuana to Ronald Todd, whom they had met through Dan Richitelli, the individual chosen to broker the marijuana. Todd brought the marijuana he had purchased into the Western District of Pennsylvania.

Moody testified on his own behalf at trial. Moody testified that, in 1982, he decided that he wanted to sell his airplane. In March or April of 1982, he entered into a lease-purchase agreement with Ed Mills. Moody only received one payment on this lease-purchase agreement, which consisted of $15,000 in cash. Because Moody did not believe that this much cash could be kept safely, he returned it to Mills several days later, at the Boca Raton Airport. Moody

also testified that his meetings with Sandini concerned Sandini's interest in purchasing various pieces of Moody's property, including his Cessna 401. No sale ever came of any of these discussions. At none of the meetings between Moody and Sandini, insists Moody, were drugs ever discussed.

Appellant Moody's first point of appeal is based on Federal Rules of Evidence 404(b) and 403. Moody argues that the admission at trial of evidence regarding the meetings between the Mills group and Hilmer Sandini was irrelevant and prejudicial, because the profferred testimony concerned a cocaine conspiracy in which Moody was not involved. The prosecution's purpose in introducing this testimony, Moody argues, was the "prejudicial and improper [one] of showing that Moody had been associating with some bad people." Brief for Appellant at 16. Moody argues that no evidence of these meetings should have been admitted at trial, or, short of that, that any reference to the cocaine conspiracy should have been excluded. The government argued successfully at trial that the evidence of the Sandini meetings was essential to its case because, without it, "[n]othing would make any sense." Appendix at 245. On appeal, the government argues that the Sandini meetings were needed to show that, contrary to Moody's testimony, Moody was fully aware of how his airplane was being used by Mills.

■ Before reaching the merits of Moody's claims under Rules 404(b) and 403 we must determine whether appellant is barred from raising these claims by Federal Rule of Evidence 103(a)(1). Rule 103(a)(1) restricts appellate review of evidentiary errors to those in which the complaining party has "stat[ed] the specific ground of objection, if the specific ground was not apparent from the context...." Although the degree of specificity required by the Rule is not clear, it has been established that general objections, such as the

characterization of the offending evidence as irrelevant, will not suffice. *See, e.g., United States v. Blackshear,* 568 F.2d 1120, 1121 (5th Cir.1978).

■ Appellant Moody's principal ground for objecting to the admission of the evidence of the Sandini meetings is that these meetings constituted "other acts" that were relied upon by the prosecution to suggest that Moody had a propensity for drug-related crime or a generally bad character as demonstrated by his association with Sandini. Such tactics are prohibited by Rule 404(b), which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to show that [the defendant] acted in conformity therewith." Appellant Moody also argues that the testimony about the Sandini meetings should have been excluded under Rule 403, which directs the trial judge to exclude any relevant evidence that is "substantially outweighed by the danger of unfair prejudice." Appellant did not properly preserve either of these grounds of objection for appeal. At no point during the colloquy between defense counsel, the United States Attorney and the trial judge did defense counsel specifically invoke either Rule 404(b)[1] or Rule 403, as required by Rule 103(a)(1) and our precedents. *See Carter v. Hewitt,* 617 F.2d 961, 966 n. 4 (3d Cir. 1980); *United States v. Long,* 574 F.2d 761, 766 (3d Cir.), *cert. denied,* 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978). Nor was defense counsel's reliance on either of these Rules "apparent from the context." *See United States v. Gibbs,* 739 F.2d 838, 849 (3d Cir.1984), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985). The substance of the colloquy was not of such a character to put the trial judge on notice that an objection based on Rule 404(b) or Rule 403 was at issue. Instead, defense counsel simply repeated three times that the information was "irrelevant." The trial judge's determination that the evidence was admissible will not

---

1. The United States Attorney, however, did remark that "[i]f nothing else, it would certainly be 404 anyway because they are discussing at the same time multiple acts." Appendix at 246.

be disturbed. *See Kane v. Ford Motor Co.*, 450 F.2d 315, 316 (3d Cir.1971). Therefore, appellant Moody's appeal must fail as far as it relies on Rule 404(b) and Rule 403 because those grounds for objection were not properly preserved for appellate review.

Appellant Moody's second point of appeal is that the trial court erred in denying his motion for judgment of acquittal on Counts II and IV of the indictment (the conspiracy to import and substantive importation counts) based on the prosecution's failure to prove venue in the Western District of Pennsylvania. The Constitution of the United States restricts the government's choice of venue in criminal cases. In Article III, the Constitution requires that "the trial of all crimes ... shall be held in the State where said crimes shall have been committed...." U.S. Const. art. III, § 2, cl. 3. The Sixth Amendment further provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and District wherein the crime shall have been committed...." U.S. Const. amend. VI. Appellant Moody claims that the alleged crime of importation ended in Florida, and that the prosecution of his case in the Western District of Pennsylvania thus violated the U.S. Constitution.

The United States contends that Moody has waived his right to object to venue in the Western District of Pennsylvania. The government correctly asserts that objections to venue are waived if not raised in a timely manner, *i.e.*, "at least prior to the close of the government's case ... and perhaps before the trial begins." *United States v. Polin*, 323 F.2d 549, 577 (3d Cir.1963). However, all circuits reaching this question have mitigated the harshness of this rule by holding that venue objections are waived only "when the indictment ... clearly reveals [the venue] defect but the defendant fails to object." *United States v. Price*, 447 F.2d 23, 27 (2d Cir.), *cert. denied*, 404 U.S. 912, 92 S.Ct. 232, 30 L.Ed.2d 186 (1971). Consequently, where there is a proper allegation of venue

in the indictment, but the government fails to prove that allegation at trial, a challenge to venue in a motion for acquittal is timely. *See* 2 C. Wright, *Federal Practice and Procedure: Criminal* § 306, p. 600, n. 9 and cases cited therein (2d ed. 1982 & Supp. 1986). Until the government rests its case, the defendant has no notice that a facially proper allegation of venue is in fact defective, and thus there can be no waiver until the close of the government's case. *United States v. Black Cloud*, 590 F.2d 270, 272 (8th Cir.1979); *United States v. Bohle*, 445 F.2d 54, 58 (7th Cir.1971). Moody has not waived his right to object to venue, because venue in the Western District of Pennsylvania was properly alleged in Counts II and IV of the indictment, which charged Moody with conspiracy to import and importation of marijuana into the Western District of Pennsylvania. *See United States v. Netz*, 758 F.2d 1308, 1311–12 (8th Cir.1985) (no waiver of objection to venue in the Western District of Missouri where indictment charged defendant with importation of cocaine into the Western District of Missouri).

Federal venue in narcotics importation cases is controlled by 18 U.S.C. § 3237(a), which provides that

### § 3237. Offenses begun in one district and completed in another

(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or *into which such* commerce, mail matter, or *imported object* or person moves.

18 U.S.C. § 3237(a) (1982) (emphasis added). Under the plain meaning of the statutory language, venue is proper in the Western District of Pennsylvania because the "imported object," *i.e.*, the marijuana, "move[d]" into the Western District of Pennsylvania.

Appellant Moody argues that 18 U.S.C. § 3237(a) is inapplicable to him because the statute was not enacted until after the commission of the crime. The government responds that the statute was enacted not to alter but to clarify prior law in this area. The resolution of this debate is inconsequential. Appellant Moody asks this court to apply the teachings of a line of cases holding that venue is properly laid in the district of the marijuana's "final destination." *See, e.g., United States v. Godwin,* 546 F.2d 145 (5th Cir.1977); *United States v. Jackson,* 482 F.2d 1167 (10th Cir.1973), *cert. denied,* 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974). It is this same line of cases that the government believes underlies the amendment of 18 U.S.C. § 3237(a). Therefore, we will apply the teachings of the final destination cases to this appeal.

■ Appellant Moody relies on five cases in which narcotics were destined for one destination, seized at a port of entry, *i.e.*, California or Florida, and then sent on to the destination originally intended to be the final destination by the defendant. *See United States v. Netz,* 758 F.2d 1308 (8th Cir.1985); *United States v. Lowry,* 675 F.2d 593 (4th Cir.1982); *United States v. Gray,* 626 F.2d 494 (5th Cir.1980), *cert. denied,* 449 U.S. 1091, 101 S.Ct. 887, 66 L.Ed.2d 820 (1981); *United States v. Godwin,* 546 F.2d 145 (5th Cir.1977); *United States v. Jackson,* 482 F.2d 1167 (10th Cir. 1973), *cert. denied,* 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974). In each of these cases, the appellate court concluded that the proper venue for the prosecution was the final destination of the contraband rather than the port at which the narcotics entered the country. Appellant Moody argues that the critical point in these cases is that the courts held that proper venue was in the district that the defendant *intended*

to be the final point of destination for the contraband. Although the facts of the cases support this contention, there is no language in any of the opinions to support it. These courts were concerned not with the well-laid plans of defendants, but with the artificiality of assigning venue to the district of the port of entry. They were anxious to reject an earlier precedent from the Eastern District of Virginia asserting that the port of entry was the proper venue *per se* in marijuana importation cases. *See United States v. Lember,* 319 F.Supp. 249 (E.D.Va.1970). Thus, these courts held not that the proper venue for a violation of 21 U.S.C. § 952(a) is the destination intended by the defendant, but that

> importation of a controlled substance in violation of 21 U.S.C. § 952(a) is a "continuous crime" that is not complete until the controlled substance reaches its final destination point, and that venue is proper in any district along the way.

*Gray,* 626 F.2d at 498 (citing *Jackson,* 482 F.2d at 1178); *accord, Godwin,* 546 F.2d at 146–47.

It is unrealistic to assume that the "final destination" of all Florida-based drug smugglers is Florida. Florida is merely the conduit through which many controlled substances imported into this country must pass before reaching destinations outside of that state. Appellant argues that it would be unjust and irrational to lay venue in any jurisdiction where a small amount of contraband imported into Florida happened to find its way. That is not what happened in this case. This case involves the transportation of $50,000 worth of marijuana purchased almost immediately after the drug's arrival in this country by an individual contacted by the coconspirators' own specially-selected marijuana broker. Although the Western District of Pennsylvania may not have been the final destination intended by the appellant, it was nevertheless the final destination of a considerable amount of the marijuana he conspired to import into this country. To adopt appellant Moody's argument and hold that Florida was the "final destination" for this

contraband would be to reinstate *Lember*'s irrational port of entry rule rejected by the very authorities appellant cites. Venue was properly laid in the Western District of Pennsylvania.

The appellant's conviction will be affirmed.