

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-14-2002

# USA v. Jake

Precedential or Non-Precedential:

Docket 0-1501

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Jake" (2002). *2002 Decisions.* Paper 122.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/122

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 14, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1501

UNITED STATES OF AMERICA,
      Appellant

v.

TONY R. JAKE,
a/k/a Smiley

Appeal from the United States District Court
for the Middle District of Pennsylvania
(Criminal No. 99-cr-00024)
District Judge: Honorable Malcolm Muir

Argued: March 7, 2001

Before: ALITO, McKEE, AND KRAVITCH,*
Circuit Judges,

(Filed: February 14, 2002)

      William S. Houser, Esq.
      Theodore B. Smith, III, Esq. (Argued)
      Office of the United States Attorney
      235 North Washington Avenue
      William J. Nealon Federal Building
      Scranton, PA 18591

       Counsel for Appellant

_____

* The Honorable Phyllis A. Kravitch, Circuit Judge, U.S. Court of Appeals
for the Eleventh Circuit, sitting by designation.

G. Scott Gardner, Esq. (Argued)
2117 West Fourth Street
Williamsport, PA 17701

 Counsel for Appellee

OPINION OF THE COURT

McKEE, Circuit Judge.

The government asks us to review the district court's order granting Tony Jake a new trial after a jury convicted him of conspiracy to obstruct justice by bribery. The district court awarded a new trial because of a perceived error in jury instructions regarding the statute of limitations. For the reasons that follow, we will reverse and remand for sentencing.1

I.

On January 28, 1999, Tony Jake was indicted on one count of murder (Count I), and one count of conspiracy to obstruct a criminal investigation by bribery in violation of 18 U.S.C. SS 2, and 1111(a) (Count II). The indictment resulted from the stabbing death of Santos Rosario, Jake's fellow inmate at the United States Penitentiary at Lewisburg, Pennsylvania. The indictment alleged that Jake had been involved in the murder of Rosario and that Jake thereafter paid another inmate to admit to the crime in order to conceal Jake's involvement.

Jake and Rosario had been involved in smuggling drugs into the Lewisburg penitentiary since at least the summer of 1991. However, sometime after they began bringing drugs into the institution, Jake began suspecting that Rosario was "skimming" some of the drugs for himself. Consequently, Jake blamed Rosario when several drug shipments were smaller than Jake expected them to be. Things apparently reached a climax a few days before

_____

1. The district court had jurisdiction pursuant to 18 U.S.C. S 3231. We have jurisdiction pursuant to 18 U.S.C. S 3731.

Rosario was killed. Jake was expecting a shipment of drugs that he never received, and he blamed Rosario for its disappearance. However, unbeknownst to Jake, that shipment had actually been intercepted and turned over to law enforcement authorities.

Tape recordings of Jake's conversations on a prison telephone on October 8, 1991 (the day of Rosario's murder), revealed Jake's displeasure over the missing shipment. His comments clearly showed that he blamed Rosario and suggested that he (Jake) was going to do something about it shortly after the telephone call. App. at 1578 ("[M]y next . . . move is like funky, baby"); App. at 1607 ("[I]n 30 minutes, it's handled.").

Rosario was stabbed to death by a homemade knife (a "shank") a few minutes after that conversation. A corrections officer saw Jake hastily leave the area of the stabbing shortly after Rosario was stabbed. Approximately 45 seconds later, another inmate reported that Rosario was dying inside the block. Jake was strip searched because of his proximity to the area, and prison officials noticed a fresh wound on his right leg.

Two days later, a prison official found clothing and a shank under a window in the gymnasium bathroom where Jake had gone immediately after the stabbing. The pants and shirt were splattered with small amounts of blood, and subsequent DNA testing disclosed that the blood was Rosario's. In addition, the pants that were recovered had a cut on the right leg which corresponded to the wound on Jake's leg.

Based on this and other evidence, officials began an investigation into Jake's involvement with Rosario's death. During the investigation, Jake was detained in the administrative detention unit of the penitentiary. While there, he had conversations with George Allred, an inmate who was assigned to the unit as an orderly. According to Allred's trial testimony, he and Jake agreed that Allred would write an affidavit admitting to the Rosario murder in order to insulate Jake from the investigation. In exchange for this false confession, Jake was to pay Allred $10,000.2

_____

2. Allred was serving a 75 year prison sentence and had no hope of ever leaving prison anyway.

3

Pursuant to that agreement, Jake arranged to have his sister and a friend named Deldon Echols wire money to Naomi Yarboski, a friend of Allred's. Jake made several payments pursuant to this arrangement during the early 1990s.

The government alleged this conspiracy to obstruct a criminal investigation in Count II of the indictment. Both sides agree that the applicable statute of limitations for that offense is five years.3 However, most of the overt acts alleged indicate that the conspiracy occurred between 1991 and 1995. Only one of the alleged overt acts occurred within five years of January 28, 1999, the date of the indictment. That was a telephone conversation between Jake and Echols. The conversation occurred after Echols received a subpoena to appear before the grand jury investigating Rosario's murder. During that conversation, Jake told Echols to tell the grand jury that the money that he had caused to be sent to her for Allred was really to pay for pornographic magazines. The money had actually constituted Allred's payments for taking responsibility for stabbing Rosario.

Jake testified at trial and admitted to having those conversations. He also testified that he knew that the money was not actually for pornographic magazines when he told Echols to testify to that effect before the grand jury. He did not, however, admit that the money was a bribe. Rather, he testified that the payments were his way of rewarding Allred for coming forward and truthfully accepting responsibility for admitting that he (Allred) had actually been the one who murdered Rosario. App. at 1005–14 to 1005–21. At no time during the trial did Jake or anyone else dispute the date of the conversation with Echols.

At the conclusion of the trial, the prosecutor and defense attorney consented to the district court instructing the jury

_____

3. "In order to prove a conspiracy to obstruct justice, the government must establish that there was an agreement whose object was to obstruct justice, that the defendant knowingly joined it, and that at least
one overt act was committed in furtherance of the object of the agreement." United States v. Davis, 183 F.3d 231, 243 (3d Cir. 1999).

4

before closing arguments. Neither counsel objected to the charge the court subsequently gave. The district court's charge included an instruction on the statute of limitations and the overt acts. However, the court did not inform the jury that it must agree that the defendant committed at least one act within five years of the date of the indictment in order to convict under Count II.[4] The court instructed the jury, in part, as follows:

> The government must prove beyond a reasonable doubt that at least one overt act was committed by a member of the conspiracy. You must unanimously agree that the same overt act was committed. I will emphasize this point, before you can conclude that Mr. Jake is guilty of conspiracy you must unanimously agree that the same overt act was committed. It is not sufficient for five jurors to believe overt act #1 was committed and 7 jurors to believe overt act # 2 was committed. All of you must agree and be convinced beyond a reasonable doubt that the same overt act was committed.

App. at 20-21.

Even though defense counsel did not object to that charge during the charge conference, he asked to see the court at sidebar after the court finished its instructions and the prosecution finished its principal closing argument. There, the following exchange occurred:

> THE COURT: Now, what did you want to put on the record, Mr. Gardner?
>
> MR. GARDNER [defense counsel]: Your honor, with regard to count two, the conspiracy to obstruct a criminal investigation by means of bribery.
>
> THE COURT: Yes.
>
> MR. GARDNER: With regard to the first six alleged overt acts, those acts occurred on or before September 23, 1992. And, Your Honor, the indictment is dated January 28, 1999. So it's clear

_____

4. There is no statute of limitations for murder as charged in Count I. 18 U.S.C. S 3281.

that those six alleged overt acts occurred outside the five year statute.

\* \* \*

MR. GARDNER: Your Honor, those six alleged overt acts occurred outside of the five year statute of limitations so it occurred to me that they would not be proper for consideration by the jury. I would ask that the jury be so instructed.

THE COURT: [to the prosecutor] What's your view?

MR. HOUSER [the prosecutor]: My view is that's simply not the law. As long as there's one overt act committed within the statute of limitations it's entirely appropriate for the others to be considered as well.

THE COURT: Yeah. Well, that's my understanding, so we'll deny the motion. If you're right we'll probably have to retry it.

App. at 1476-2 to 1477-3 (emphasis added). Following the completion of argument, the jury retired to deliberate and thereafter returned a verdict of not guilty as to the murder charged in Count I, but guilty of the conspiracy to obstruct a criminal investigation under Count II.

Thereafter, Jake filed a motion for a new trial based upon the district court's failure to inform the jury that it could not convict on Count II unless all jurors were convinced beyond a reasonable doubt that Jake committed at least one overt act within five years of the date of the indictment. The district court agreed, and granted Jake's motion for a new trial. The court held that defense counsel had put the court on notice of the defect in the jury instructions during the sidebar colloquy we have set forth above. Accordingly, the court held that the objection was preserved, and that the failure to give the requested charge constituted reversible error.

This appeal followed.5
_____

5. We review a district court's grant of a new trial for abuse of discretion.
United States v. Lloyd, 269 F.3d 228, 237 (3d Cir. 2001). "By definition,

6

II.

The government argues that (1) Jake failed to object to
the charge, and thereby waived any problem under the
statute of limitations; (2) even if the statute of limitations
was not waived, Jake nonetheless failed to preserve an
objection to the court's charge and; (3) any error the court
may have committed in initially refusing to give the
requested charge was harmless.

It is well settled that a criminal defendant is entitled to
an instruction on the applicable statute of limitations. See
Grunewald v. United States, 353 U.S. 391, 396-397 (1957).
See also United States v. Schurr, 794 F.2d 903 (3d Cir.
1986). Accordingly, the trial court should have informed the
jury of the need to prove at least one overt act within five
years of the date of the indictment, just as defense counsel
argued in his motion for a new trial. See Grunewald, 353
U.S. at 396-97; Fiswick v. United States, 329 U.S. 211, 216
(1946) ("The statute of limitations, unless suspended, runs
from the last overt act during the existence of the
conspiracy."). However, the statute of limitations is an
affirmative defense that is waived unless properly
preserved. United States v. Karlin, 785 F.2d 90, 92-93 (3d
Cir. 1986), cert. denied, 480 U.S. 907 (1987). See also
United States v. Oliva, 46 F.3d 320, 325 (3d Cir. 1995)
(citing Karlin, 785 F.2d at 90-93) (where the defendant
neither raised the statute of limitations as a defense before
or at trial nor asked for any jury instructions on the
defense, the defense is waived and this court is prevented
from reaching the issue on direct review).

Here, the district court concluded that defense counsel's
comments at sidebar were sufficient to preserve the issue of
the statute of limitations and the need to inform the jury
that the government must establish beyond a reasonable

_____

a district court `abuses its discretion when it makes an error of law.' "
United States v. Askari, 140 F.3d 536, 539 (3d Cir. 1998) (en banc)
(quoting Koon v. United States, 518 U.S. 81, 100 (1996)), vacated on
other grounds, 159 F.3d 774 (3d Cir. 1998). Consequently, " `[t]he abuse
of discretion standard includes review to determine that the discretion
was not guided by erroneous legal conclusions.' " Id.

7

doubt that Jake committed at least one overt act within five years of the date of the indictment. We disagree.

We believe that the only practical interpretation of the aforementioned sidebar exchange between defense counsel and the court is the one given it at the time by both the court and the prosecutor. When the conversation occurred, the district court and the prosecutor clearly thought that defense counsel was only asking the court to limit the evidence the jury could consider to those overt acts occurring within five years of the indictment. That is what defense counsel said, and that is what the court and prosecutor heard. This is evident not only from a common sense interpretation of counsel's statement, but also from the responses of the court and prosecutor. When asked to respond, the prosecutor replied that the jury could consider all of the alleged overt acts "[a]s long as there's one overt act committed within the statute of limitations . . . ." The court agreed, and rejected defense counsel's request.6 Defense counsel did not attempt to clarify the interpretation that was evident from the prosecutor's reply, nor did he object to the charge that the court gave. Defense counsel now attempts to parlay the sidebar colloquy into an objection that he could have raised at sidebar, but didn't.

The district court nevertheless relied upon counsel's remarks at sidebar in granting a new trial based upon the failure to charge on the application of the statute of limitations to the overt acts of a conspiracy. However, our review of the record causes us to conclude that defense

_____

6. The prosecutor and court were correct. A conspiracy is a continuing offense and a jury may consider each and all of a defendant's actions in furtherance of the conspiracy so long as the indictment is brought within five years of the last overt act. See United States v. Johnson, 165 F.2d 42, 45 (3d Cir. 1947) (overt acts committed outside the statute of limitations period for a conspiracy to obstruct justice may be proved to show the existence and continuance of the conspiracy so long as at least one overt act is within the statute of limitations period). See also Gruenwald, 353 U.S. at 396–97; Schurr, 794 F.2d at 907. Thus, the district court correctly rejected defense counsel's attempt to limit the jury's consideration to only those overt acts occurring within five years of the indictment.

counsel simply did not request the statute of limitations instruction that the new trial was predicated upon.

Rule 30 of the Federal Rules of Criminal Procedure provides, in relevant part, that

> No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.

Fed. R. Crim. P. 30. "The purpose of this provision is to provide the district court an opportunity to correct potential problems in jury instructions before the jury begins its deliberations." United States v. Russell, 134 F.3d 171, 178 (3d Cir. 1998). See also United States v. Logan , 717 F.2d 84, 91 n.13 (3d Cir. 1983) ("Rule 30 has the manifest purpose of avoiding whenever possible the necessity of a time-consuming new trial by providing the trial judge with an opportunity to correct any mistakes in the charge before the jury begins to deliberate.")

We have recognized that "the crux of Rule 30 is that the district court be given notice of potential errors in the jury instructions, not that a party be `required to adhere to any formalities of language and style to preserve his objection on the record.' " Russell, 134 F.3d at 178 (quoting United States v. O'Neill, 116 F.3d 245, 247 (7th Cir. 1997)). However, an objection must nevertheless be sufficiently precise to allow the trial court to address the concerns raised in the objection. See Fed. R. Crim. P. 30. Thus, counsel must "stat[e] distinctly the matter to which that party objects and the grounds of the objection." Russell, 134 F.3d at 179 (citing United States v. Sandini , 803 F.2d 123 (3d Cir. 1986)). "[C]ounsel is required to draw the court's attention to a specific instruction, or to a problem with an instruction, in order to put the court on notice so that a possible error may be corrected before the jury begins to deliberate." Davis, 183 F.3d at 252 (discussing requests for jury instructions generally). "Without a clearly articulate objection, a trial court is not sufficiently apprized of the contested issue and the need to cure a potential error to avoid a new trial." Government of the Virgin Islands v. Knight, 989 F.2d 619, 631 (3d Cir. 1993).

In Knight, a case we find instructive, defense counsel requested an involuntary manslaughter charge be included in the court's instructions on homicide. The court agreed. However, defense counsel withdrew that request when the court agreed to also inform the jury that assault with a deadly weapon was a felony as the prosecutor requested. Confronted with that additional instruction as to possession of a deadly weapon, defense counsel withdrew his request for an involuntary manslaughter charge. The court afforded both attorneys an opportunity to object to the proposed charge before giving it, but defense counsel did not object when the court instructed the jury without including an instruction on manslaughter. The defendant was convicted, and appealed.

On appeal, defense counsel argued that he requested that the court not give a manslaughter charge "in conjunction with the proposed explanation of a felony." Id. at 631. Counsel insisted that his original objection to the complete omission of the charge informed the court that he wanted a manslaughter charge without the explanatory instruction regarding possession of a deadly weapon. Id. We disagreed. We concluded that defense counsel had not objected with the specificity required under Rule 30 to preserve an objection.

> Defense counsel . . . did not make known that he maintained an objection to the failure to give the charge in the form advocated. Moreover, when the court asked if either party had any objections to the jury instructions in their final form, defense counsel was silent.

Id.

Moreover, in Jones v. United States, 527 U.S. 373, 387 (1999), the Supreme Court said:

> a request for an instruction before the jury retires[does not] preserve an objection to the instruction actually given by the court. Otherwise district judges would have to speculate on what sorts of objections might be implied through a request for an instruction and issue rulings on "implied" objections that a defendant never intends to raise.

10

Jake's attempt to wedge his sidebar comments into the parameters of Rule 30 requires just such speculation. The fact that the district court ultimately concluded that Jake's remarks were sufficient to put it on notice of the requirement for an instruction on the overt act occurring within the statute of limitations does not change that. Defense counsel's request for an additional charge does not constitute an objection to the charge that was given. See also United States v. Sandini, 803 F.2d 123 (3d Cir. 1986).

In Sandini, defense counsel failed to preserve an objection under Fed. R. Evid. 404(b) merely by objecting on grounds of "relevance" at three different times during the trial. 803 F.2d at 126. We found that counsel's failure to object under Rule 404(b) was not preserved because counsel did not rest his objection upon that rule. Id.

Here, the district court cited our opinion in Russell in concluding that the objection was preserved, and granting a new trial. There, we found that the colloquy between the judge and trial court put the court on notice of a possible error in the jury instructions. The trial court did not instruct the jury as to the need for unanimity on predicate offenses in a continuing criminal enterprise pursuant to 21 U.S.C. S 848 as required by United States v. Edmunds, 80 F.3d 810, 814 (3d Cir. 1996). Following the charge, the judge met with counsel to allow them an opportunity to voice any objections to the court's instructions. During the ensuing conference, the prosecutor and defense counsel engaged in an extended debate over the applicability of Edmunds. Although defense counsel did not explicitly object to the instructions, he nonetheless informed the court that he did not think that Edmunds was applicable, and proposed an alternate jury instruction. Russell, 134 F.3d at 178–180. On those facts, we held that the colloquy was "tantamount to an objection and therefore sufficient to preserve this issue" for review. Id. at 180.

Although counsel's statements in Russell did not focus on a specific objection to the trial judge's charge, they did illuminate the debate over the unanimity rule we had interpreted in Edmunds. Moreover, counsel's alternative instruction afforded a clear opportunity for the trial court to respond to the problem that counsel had identified. Unlike

11

Russell, the colloquy here did not focus on the legal issue in question. Rather, it not only focused upon an entirely distinct issue, it also rested upon an erroneous view of the law.

For these reasons, we find that Jake failed to preserve an objection to the absence of a statute of limitations instruction.7 Accordingly, we review Jake's objection only for plain error. See Jones, 527 U.S. at 388; Russell, 134 F.3d at 178. "For there to be plain error, there must be an `error' that is `plain' and that `affects substantial rights'. A deviation from a `legal rule is `error'.

A `plain' error is one which is `clear' or`obvious.' " Russell, 135 F.3d at 180 (internal citations omitted). In plain error cases, the defendant bears the burden of persuasion that a plain error has occurred. United States v. Olano , 507 U.S. 725, 734 (1993).

III.

An appellate court may correct a plain error only if that error "affects substantial rights." Fed. R. Crim. P. 52(b). "[I]n most cases it means that the error must have been prejudicial: It must have affected the outcome of the district

_____

7. Jake's counsel also contends that if the statute of limitations defense was actually waived, he was ineffective in preserving the issue for review.
He therefore urges us to remand for a hearing on that issue. However, we have stated repeatedly that Sixth Amendment claims of ineffective assistance of counsel should ordinarily be raised in a collateral proceeding pursuant to 28 U.S.C. S 2255 rather than on direct appeal. Oliva, 46 F.3d at 325; Sandini, 888 F.2d at 312; Government of the Virgin Islands v. Forte, 806 F.2d 73, 77-78 (3d Cir. 1986); United States v. Gambino, 788 F.2d 938, 950 (3d Cir.), cert. denied, 479 U.S. 825 (1986). We have noted an exception to this practice where the Sixth Amendment claim of ineffective assistance of counsel is predicated on an actual showing of conflict of interest between the attorney and the accused as apparent from the face of the record. See Government of the Virgin Islands v. Zepp, 748 F.2d 125, 133-134 (3d Cir. 1989). However, nothing in the record or argument of Jake's counsel indicates a readily apparent conflict of interest between Jake and his counsel or any other extraordinary circumstances which would mandate a hearing on the issue of ineffective assistance of counsel. Accordingly, we reject Jake's request for an evidentiary hearing during the course of his direct appeal.

12

court proceedings." Olano, 507 U.S. at 734. However, Jake clearly cannot satisfy that burden because he concedes that an overt act did occur within five years of the date of the indictment. That evidence was not only uncontradicted, it was furnished by Jake himself.

The district court believed that Jake was prejudiced by the omission of the charge because the jury "may have utilized an overt act outside the statute of limitations to find Jake guilty of Count II [the conspiracy count] of the indictment." App. at 26.8 However, Jake testified about his conversation with Echols, and admitted that he attempted to get her to lie to the grand jury. The jury heard a recording of that conversation, and there is nothing to suggest that the conversation did not occur on October 2, 1997 as charged in overt act #6 in the indictment. 9

Accordingly, Jake admitted to instructing Echols to perjure herself in front of the grand jury within five years of the indictment. Therefore, notwithstanding any alleged error, the absence of a specific instruction on an overt act occurring within five years of the indictment could not have prejudiced Jake. It was never an issue, and Jake's own testimony removed all doubt. Therefore, Jake's contention of error must fail. See Neder v. United States , 527 U.S. 1 (1999) (failure to charge on an element of a crime was not prejudicial where uncontroverted evidence established an element of the offense and no reasonable jury could have concluded that the element had not been established beyond a reasonable doubt).

IV.

For the foregoing reasons, we will vacate the order granting a new trial, reinstate the conviction under Count II, and remand to the district court for sentencing.

_____

8. The district court briefly discussed "prejudice" as part of its harmless
error analysis.

9. There is no challenge to the chain of custody of the tape recordings or any of the logs or records that may have been relied upon to furnish the date of the conversation.

13

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

14