NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2225
_____

UNITED STATES OF AMERICA,

v.

DAWAN RASHEED McBRIDE,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-08-cr-00308-001)

District Judge: Honorable Maurice B. Cohill, Jr.

_____

Submitted Under Third Circuit LAR 34.1(a)
March 12, 2010

Before: AMBRO, SMITH and ALDISERT, Circuit Judges
(Opinion Filed: April 14, 2010)

_____

OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

Dawan Rasheed McBride appeals from an order of the District Court for the

Western District of Pennsylvania denying his motion to suppress a firearm seized after an

investigatory stop, see Terry v. Ohio, 392 U.S. 1 (1968), as well as the imposition of a mandatory minimum sentence as an armed career criminal following his plea of guilty to the charge of felon-in-possession. McBride argues that the District Court erred in using the reasonable suspicion standard and should have instead required the arresting officers to demonstrate probable cause for the stop. He additionally argues that his fifteen-year mandatory minimum sentence is unjust and constitutes cruel and unusual punishment because his prior drug convictions were minor and should not be considered serious drug offenses for purposes of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The Government submits that the appellate waiver incorporated in McBride's plea agreement precludes us from exercising our jurisdiction to review McBride's sentence and any theories of suppression not preserved in the District Court. We conclude that the District Court did not err, and we will affirm for the reasons stated below.[1]

I.

Because the parties are familiar with the facts and proceedings in the District Court, we will recite them only as necessary to the discussion.

The following circumstances are elicited from testimony provided during the District Court's suppression hearing. On January 30, 2007, Pittsburgh Police Detective Will Jeffries, an experienced narcotics officer, was performing surveillance in

---

[1]The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

plainclothes outside of Tim's Bar at the corner of Perry Street and Wylie Avenue in Pittsburgh, an area known for drug activity. Officer Jeffries testified that he observed McBride and a woman, Ms. Terry, leave the bar and that,

> [a]s they walked on the sidewalk, going back towards the Q45, the black vehicle, I observed that the passenger, Mr. McBride, knocking a cigar blunt out, what we call a blunt, which you roll marijuana in and you smoke it out of. Knocking the remains out on the sidewalk. . . . The lights come on. I pull up my binoculars. I could see them, the passenger, Mr. McBride, rolling a marijuana blunt.

(App. 60-61.) He subsequently radioed a marked unit to respond to the narcotics activity. A three-person unit, including Officer Bobbs, responded. The vehicle was stopped a few blocks from Tim's Bar; no traffic violations were observed. Officer Bobbs approached the passenger side, illuminating the interior with a flashlight. He testified that he saw a marijuana blunt in the center console area, requested that McBride leave the vehicle, placed him under arrest, and began to search him. When Officer Bobbs felt a firearm, a physical struggle ensued. Ultimately, Officer Bobbs subdued McBride and seized the firearm.

There are several discrepancies between the testimony of the officers and that of the defendant and driver, Terry. McBride testified and argues by brief that Terry did not leave the vehicle and was not inside the bar. Officer Jeffries testified that both Terry and McBride left the bar and entered the vehicle. There was conflicting testimony as to whether McBride stated that he was "just going to smoke the blunt" prior to or subsequent to the arrest. (App. 105.) McBride protests that, although he did roll a blunt,

3

he did so inside the bar and that he was kissing Terry and searching for a CD while inside the vehicle and under police surveillance. Terry similarly testified that although the blunt was in her car, it had been assembled before McBride entered the vehicle.

McBride was indicted on August 13, 2008, for one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). On October 24, 2008, he filed a motion to suppress the firearm seized during his arrest. The District Court denied the motion at the conclusion of a hearing on January 8, 2009. On February 3, 2009, McBride entered a plea agreement, waiving certain appellate and collateral rights, but preserving the right to appeal the denial of the motion to suppress as well as limited sentencing issues. At sentencing on April 21, 2009, the Court determined that McBride was an Armed Career Criminal ("ACC") pursuant to 18 U.S.C. §§ 922(g)(1) and 924(e), and sentenced him to the statutory mandatory minimum term of fifteen years' imprisonment followed by five years of supervised release. See U.S.S.G. §4B1.1(c). McBride filed a timely Notice of Appeal on April 23, 2009.

McBride's written plea agreement contained a broad appellate waiver. He reserved the right to take a direct appeal from the sentence only if (1) the government takes a direct appeal of the sentence imposed, (2) "the sentence exceeds the applicable statutory limits set forth in the United States Code," or (3) "the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines." (App. 127-128.) McBride also reserved the right to appeal the issue of "[w]hether the district court

4

erred in failing to suppress the evidence seized from McBride." (App. 127-128.)

## II.

Because the Government has invoked the appellate-waiver provision contained in McBride's plea agreement, we must determine as a threshold matter whether the waiver prevents us from exercising our jurisdiction to review the merits of some or all of McBride's appeal. United States v. Corso, 549 F.3d 921, 926 (3d Cir. 2008). We note initially that McBride does not challenge the validity of the appellate waiver contained in his plea agreement and, our review of the record satisfies us that it was knowing and voluntary. Thus, we will decline to exercise our jurisdiction on the merits of each argument if we conclude the issue falls within the scope of the appellate waiver unless enforcing the waiver would work a miscarriage of justice. United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2008).

## III.

Because the sentence does not exceed the statutory limit or the guideline range, McBride's appeal of his sentence is clearly precluded by the terms of the appellate waiver. We may therefore review his sentence only if enforcement of his appellate waiver with respect to the sentencing appeal will work a miscarriage of justice. McBride failed to brief the miscarriage-of-justice exception and instead attacked his sentence directly, arguing that it violates the Eighth Amendment. According to McBride, the convictions

triggering his ACC designation reflect nothing more than street-level drug dealing,[2] and because he is neither a dangerous criminal nor a drug trafficker, the statutory mandatory minimum sentence of fifteen years is cruel and unusual punishment.[3] We will construe his brief liberally and consider whether enforcement of the appellate waiver on McBride's Eighth Amendment claim will effect a miscarriage of justice.

We recognize that the Eighth Amendment's prohibition of "cruel and unusual punishments" includes a "narrow proportionality principle" applying to noncapital sentences. Ewing v. California, 538 U.S. 11, 20 (2003) (plurality) (quotation omitted). Courts have uniformly held that the mandatory minimum sentences for Armed Career Criminals, imposed pursuant to 18 U.S.C. § 924(e), do not violate the Eighth Amendment. See, e.g., United States v. Reynolds, 215 F.3d 1210, 1214 (11th Cir. 2000) (collecting cases). McBride has not carried his burden of showing a gross imbalance between the crime and sentence imposed. See United States v. MacEwan, 445 F.3d 237, 247-248 (3d Cir. 2006) ("If the defendant fails to show a gross imbalance between the

---

[2] The three convictions triggering his ACC designation were: (1) delivery and possession with intent to deliver crack-cocaine, $20 worth (PSR ¶ 33); (2) delivery and possession with intent to deliver crack-cocaine, $10 worth (PSR ¶ 34); and (3) possession with intent to deliver crack-cocaine (PSR ¶ 30). The courts in all three instances sentenced McBride to less than two years' imprisonment. (PSR ¶¶ 30, 33, 34.)

[3] Under the ACCA, convictions qualify an offender for ACC status based on the maximum term prescribed by the statute under which the offender was previously sentenced. See 18 U.S.C. § 924(e)(2)(ii) (defining a "serious drug offense" as a drug offense under state law with a maximum term of at least ten years). Thus, a criminal record in one state may give rise to an ACC designation whereas the identical criminal record in a different state may not give rise to an ACC designation.

6

crime and the sentence, our analysis is at an end."). Because he cannot prevail on his Eighth Amendment claim, enforcement of the appellate waiver will not result in a miscarriage of justice. Pursuant to the appellate waiver we will not exercise our jurisdiction to review further McBride's appeal of his mandatory minimum sentence.

IV.

A.

McBride's appeal of the District Court's denial of his Motion to Suppress is two-pronged. He first attacks the reasonable suspicion standard applied by the District Court, arguing that the Court should have required probable cause for the initial stop. He next contends that the Court erred in denying his motion under either standard. Both arguments appear to be clearly permitted by the language of the appellate waiver, which preserved McBride's right to appeal the issue of "[w]hether the district court erred in failing to suppress the evidence seized from McBride." (App. 128.) The Government argues that McBride's new theory of suppression is precluded by the appellate waiver agreement because it was not argued in the Court below. The Government argues, in the alternative, that traditional principles of waiver preclude McBride from arguing on appeal a theory of suppression which was not presented in the District Court. Because we agree that McBride failed to preserve this argument for appeal under Rule 12(e) of the Federal Rules of Criminal Procedure and traditional principles of waiver, we will not address whether it is precluded by the appellate waiver.

7

B.

It is well established that, absent good cause, Rule 12(e) prohibits a criminal defendant from raising a theory of suppression on appeal that was not argued in the District Court. United States v. Rose, 538 F.3d 175, 176 (3d Cir. 2008). Under Rule 12(e) of the Federal Rules of Criminal Procedure, "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides. For good cause, the court may grant relief from the waiver." We have expressly applied this rule to a failure to file a motion to suppress as well as to a failure to include the specific theory raised on appeal. Rose, 538 F.3d at 182; see also United States v. Lockett, 406 F.3d 207, 212 (3d Cir. 2005) ("[I]n the context of a motion to suppress, a defendant must have advanced substantially the same theories of suppression in the district court as he or she seeks to rely upon in this Court."). Because McBride did not raise his probable-cause theory of suppression in the District Court, we deem that argument waived unless McBride is able to show "good cause" for delaying presentation of this argument until appeal. See Rule 12(e).

McBride argues that we should reach his argument because his position on appeal[4] is entirely legal in nature and the policy of waiver – ensuring that the record below is sufficiently developed – is not served by finding a legal argument waived. We agree that

---

[4] "[T]he law around vehicle stops was unnecessarily and unjustifiably mutated to require only reasonable suspicion." (Appellant's Reply Br. 3.)

his argument is legal in nature, but do not find that sufficient to provide good cause to void the presumption of waiver. As we noted in Rose, it is "unwise to excuse a defendant from compliance with Rule 12 even where the court of appeals thinks the record is sufficiently developed. To do so would ignore the specific language of Rule 12, something we do not consider ourselves at liberty to do." Rose, 538 F.3d at 183 n.8.

McBride also argues that his counsel at trial was ineffective[5] and this constitutes good cause to entertain the issue on appeal. "[W]e have stated repeatedly that Sixth Amendment claims of ineffective assistance of counsel should ordinarily be raised in a collateral proceeding pursuant to 28 U.S.C. § 2255 rather than on direct appeal." United States v. Jake, 281 F.3d 123, 132 n.7 (3d Cir. 2002). Assuming, without deciding, that we may consider whether a Sixth Amendment issue constitutes good cause to entertain a theory of suppression not presented in the District Court, we cannot accord relief to McBride. The basis for his contention – the failure of counsel to challenge the reasonable suspicion standard, a precept fully ingrained in the law – is at the very best tilting at windmills in Don Quixote style. It does not constitute good cause to entertain this new theory of suppression on appeal.

McBride has not carried his burden of showing good cause for failure to raise this issue in the court below. The issue is therefore waived under Federal Rule of Criminal

---

[5]McBride argues, in his reply brief, that his counsel at trial provided ineffective assistance by failing to argue the issue of probable cause and by conceding that the determinative question was one of credibility. (Appellant's Reply Br. 4-5.)

9

Procedure 12(e), as construed by our court in United States v. Rose. We will proceed to review the District Court's determination that the officers had a reasonable suspicion that the occupants of the stopped vehicle were engaging in criminal activity.

C.

We review a District Court's denial of a motion to suppress for clear error as to the underlying factual findings, and we exercise plenary review as to the District Court's application of the law to those facts. United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002). Under the clear error standard, we must accept the trial court's factual determinations unless they are either (1) "completely devoid of minimum evidentiary support displaying some hue of credibility," or (2) "bear[] no rational relationship to the supportive evidentiary data." Krasnov v. Dinan, 465 F.2d 1298, 1302 (3d Cir. 1972). Because we conclude that McBride has waived all other theories of suppression, we consider only his challenge to the District Court's credibility determinations and whether the initial stop was justified by reasonable suspicion.

"[A]n officer may conduct an investigatory stop of a moving vehicle if he has reasonable suspicion that its passengers are engaged in criminal activity." United States v. Mathurin, 561 F.3d 170, 174 (3d Cir. 2009) (citing Ornelas v. United States, 517 U.S. 690, 693 (1996) (citing Terry, 392 U.S. 1)). "Reasonable suspicion requires some minimal level of objective justification for making the stop, but it is a less exacting standard than probable cause." United States v. Silveus, 542 F.3d 993, 999 (3d Cir. 2008)

10

(quotation and citation omitted). Reasonable suspicion is established when "specific and articulable facts, together with all their rational inferences, suggest that the suspect was involved in criminal activity." United States v. Brown, 159 F.3d 147, 149 (3d Cir. 1998). "The test is one of reasonableness given the totality of the circumstances, which can include [the defendant's] location, a history of crime in the area, [the defendant's] nervous behavior and evasiveness, and [the officer's] commonsense judgments and inferences about human behavior." Johnson v. Campbell, 332 F.3d 199, 206 (3d Cir. 2003) (quotation and citation omitted). Acts that may seem innocent in themselves may collectively amount to reasonable suspicion, United States v. Nelson, 284 F.3d 472, 480 (3d Cir. 2002), and we accord deference to an officer's judgment, recognizing that the calculation of reasonable suspicion is often "imprecise," United States v. Robertson, 305 F.3d 164, 167, 168 (3d Cir. 2002).

We cannot conclude that the District Court's factual findings were clearly erroneous. McBride challenges the police officers' testimony, pointing to the disparities with his own testimony and that of Terry. The District Court and the parties agreed at the hearing that the issue came down to the question of credibility (App. 122-123), and implied in the District Court's denial of McBride's motion to suppress is a determination that the officers' testimony was more credible than that of McBride and Terry. "We review credibility determinations, like other factual findings, under a clearly erroneous standard." Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 137 (3d Cir. 2009).

11

Review for clear error is "more deferential with respect to determinations about the credibility of witnesses [] when the district court's decision is based on testimony that is coherent and plausible[.]" United States v. Igbonwa, 120 F.3d 437, 441 (3d Cir. 1997). We conclude that the police officers' testimony was both coherent and plausible and that McBride has not carried his burden of showing that the District Court's credibility determinations were clearly erroneous. See Krasnov, 465 F.2d at 1302.

We conclude also that the District Court did not err in determining that Officer Jeffries had a reasonable suspicion that the vehicle's passengers were engaging in criminal activity. At the suppression hearing, the District Court heard testimony from several police officers, the defendant and Terry, the driver of the vehicle. The Court explained that "[t]his did occur in [an area] where a lot of drug activity had been occuring." (App. 125.) Additionally, Officer Jeffries had 19 years of experience as a police officer with 12 years of specialized narcotics experience. The Court observed that his "experience and specialized training . . . allow[s] [Officer Jeffries] to make inferences and deductions from information that might well elude an untrained person[.]" (App. 125.) He has performed undercover buys, and his fellow police officers testified that he is a reliable surveillance officer. He testified credibly that, while monitoring a high-crime area, he observed the defendant emptying the contents of a cigar and performing gestures inside of a vehicle that are consonant with rolling a marijuana blunt. Under the totality of the circumstances, the District Court did not err in determining that Officer Jeffries had a

reasonable suspicion that the occupants of the vehicle were engaging in criminal activity.

*****

We have considered all the contentions presented by the Appellant and conclude that no further discussion is necessary.

The judgment of the District Court will be affirmed.