NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-3442

———


UNITED STATES OF AMERICA

v.

VIRGIL LEWIS WOLFE,
a/k/a VIRGIL WOLFE

Virgil Lewis Wolfe,
*Appellant*


———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 05-cr-00322)
District Judge: Honorable Alan N. Bloch

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
on February 7, 2012

Before: SLOVITER and VANASKIE, *Circuit Judges*, and PADOVA,
*Senior District Judge**

(Filed: February 14, 2012 )

———————

*The Honorable John R. Padova, Senior District Judge of the United States District Court
for the Eastern District of Pennsylvania, sitting by designation.

———————————

OPINION OF THE COURT

———————————

PADOVA, *Senior District Judge*.

Appellant Virgil Lewis Wolfe was found guilty after a two-day jury trial of one count of retaliating against and causing bodily injury to a federal witness, in violation of 18 U.S.C. § 1513(b)(2). He was sentenced to 100 months' imprisonment to be followed by a term of supervised release of three years. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm the conviction and sentence.

I.

As we write primarily for the parties, who are familiar with the factual context and legal history of this case, we will set forth only select background facts. As part of an investigation of a crack cocaine distribution network headed by Appellant's sister Mae Wolfe, the Drug Enforcement Administration made controlled purchases of drugs from Mae, Ronald Knox and several others, leading to the arrests of twenty individuals in April 2005. Several federal indictments followed, including one against Knox. On May 17, 2005, Knox began cooperating with the Government. On

2

July 18, 2005, Mae also agreed to cooperate against other members of the drug conspiracy. In June 2005, after it was known that Knox was cooperating with the Government against Mae, Appellant approached Knox's wife at a hot dog shop where she worked and asked her "what's [Knox] saying to the feds? What's the feds asking [Knox]?" (App. 148.) He told her that Knox "needs to take it like a man. He needs to keep his mouth shut and take it like a man." (App. 148.) Later, on August 28, 2005, while Knox was stopped at a gas station with his family in the car, Appellant and his brother John Wolfe approached him, ordered him out of the car and into a nearby alley, where they assaulted him. Appellant told Knox that he knew Knox "was telling on his sister, that [Knox] . . . was testifying against her." (App. 101.) Following this incident, Appellant and his brother John were arrested on state law assault charges. They were later indicted on a federal charge of retaliating against and causing bodily injury to a federal witness, in violation of 18 U.S.C. § 1513(b)(2). After being told he would be indicted on federal charges for assaulting a witness, Appellant made statements that "he's done worse and faced less time" and that "he was only protecting himself, and he would do it again." (App. 208.) At trial, the defense conceded that Appellant caused bodily injury to Knox, but denied that he acted with the intent to retaliate against Knox on account of his cooperation with the Government. The jury convicted Appellant and his brother. Appellant was sentenced

to 100 months' imprisonment.

## II.

Three issues are before us on appeal.

First, Appellant argues that the District Court erred in failing to instruct the jury on witness bias. Appellant argues that the key witness, the victim Knox, had a motive to color his testimony in favor of the Government because Knox expected a reduced sentence in his case if he did so. Thus Appellant argues, it was error for the District Court to give only a general witness bias / credibility jury instruction, and not give the more specific instruction that he requested.

At trial, Knox was extensively cross examined on his plea agreement with the Government. Appellant submitted a joint set of proposed jury instructions with his brother, requesting, *inter alia*, a proposed instruction that "Evidence that a witness is biased, prejudiced or hostile toward the Defendants requires you to view that witnesses' [sic] testimony with caution, to weigh it with care and subject it to close and searching scrutiny." (App. 48.) In its charge conference conducted before instructing the jury, the District Court granted a defense request to charge the jury on witness credibility, but declined to give the requested instruction on bias. (App. 230.) Counsel raised no objection to these rulings and there was no discussion about the requested bias charge either during the charge conference or after the charge was read

4

to the jury. As part of its instructions, the Court told the jury that,

> An important part of [determining guilt beyond a reasonable doubt] will be making judgments about the testimony of the witnesses who testified in this case. You should decide whether you believe what each witness had to say and how important that testimony was.
> In making that decision, I suggest that you ask yourself a few questions:
> Did the witness impress you as honest?
> Did the witness have any particular reason not to tell the truth?
> Did the witness have a personal interest in the outcome of the case?

(App. 242.)

As Appellant never objected to the District Court's ruling on his proposed jury instructions, nor objected to or engaged the Court in discussion over the denial of his requested instruction after the jury charge was read, we exercise plain error review over Appellant's unpreserved argument that the District Court improperly denied his request for a bias instruction. Fed. R. Crim P. 30; see Jones v. United States, 527 U.S. 373, 388 (1999) (stating that "a request for an instruction before the jury retires [does not] preserve an objection to the instruction actually given by the court"); United States v. Jake, 281 F.3d 123, 131-32 (3d Cir. 2002) (holding that merely requesting an instruction before the jury retires does not preserve an issue for appeal, absent any relevant colloquy on the issue after the charge is delivered to afford a clear opportunity for the trial court to respond to the problem that counsel had identified).

Plain error requires a showing of "error"; that is "clear or obvious"; that "affect[s] the appellant's substantial rights" insofar as it "affect[s] the outcome of the district court proceedings; and the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Bryant, 655 F.3d 232, 251 (3d Cir. 2011) (citing United States v. Marcus, ___ U.S. ___, 130 S.Ct. 2159, 2162 (2010)). The District Court's instruction that the jury should consider whether any witness had a personal interest in the outcome of the case was sufficient to guide the jury's deliberation, and its decision not to supplement that instruction with Appellant's requested instruction was not plainly erroneous. See United States v. Isaac, 134 F.3d 199, 204 (3d Cir. 1998) (holding that witness bias instruction is not required, especially when "it has been made clear to the jury that it is permitted to disbelieve testimony to the extent it finds that the testimony was driven more by a self-serving desire for leniency than a sense of duty to tell the truth"; and noting that this Court has never held that it is error *per se* for a trial court to refuse to give such a bias instruction even when requested).

Second, we review for plain error Appellant's unpreserved claim that the jury instructions permitted the jury to infer intent from Appellant's silence, in violation of his rights under the Fifth Amendment. Defining the intent element of 18 U.S.C. § 1513(b)(2), the trial court instructed the jury that,

6

To act with intent means to act knowingly and with the unlawful, specific intent to retaliate against a person for information relating to the commission or possible commission of a federal offense given by that person to a law enforcement officer.

Intent ordinarily may not be proved directly, because there is not a way of fathoming or scrutinizing the operation of the human mind. However, you may infer a defendant's intent from all of the surrounding circumstances. You may also consider any statements **made or omitted** by a defendant, as well as all other facts and circumstances in evidence which demonstrate the defendant's state of mind.

(App. 248 (emphasis added)). The Government concedes that we recently held that a preserved objection to this type of instruction, permitting the jury to consider any statements "made or omitted" by the defendant, violated the defendant's rights under the Fifth Amendment and was not harmless. See United States v. Waller, 654 F.3d 430, 435, 438-39 (3d Cir. 2011) (holding that the Supreme Court decision in Doyle v. Ohio, 426 U.S. 610, 619 (1976), that the prosecutor may not cause the jury to draw an impermissible inference of guilt based on the defendant's post-Miranda warnings silence, necessarily implies that the trial court may not instruct the jury to do so). The Government contends, however, that under a plain error review, Appellant cannot show that the error affected the outcome of his trial. We are constrained to agree.

Unlike the situation presented in Waller, where we found that the wholly circumstantial evidence supporting the intent element was "simply not the kind of overwhelming evidence of guilt that would readily lead us to find that the 'guilty verdict actually rendered in this trial was surely unattributable to the error,'" id. at

7

439 (quoting Sullivan v. Louisiana, 508 U.S. 275, 279 (1993)), here the evidence establishing Appellant's intent to harm Mr. Knox because of his status as a federal witness was substantial. Contrary to Appellant's assertion that the only evidence presented on the issue of retaliatory intent was the biased testimony of Mr. Knox that Appellant assaulted him because he "was telling on his sister," the Government also presented the testimony of Mrs. Knox that Appellant made similar threats to her prior to the actual assault and warned her that her husband needed to keep his mouth shut about the drug conspiracy and take it like a man. The jury also heard the testimony of law enforcement officers that Appellant stated that he had done worse and that he was protecting himself and would do it again. Thus, we conclude that the erroneous jury instruction did not affect the outcome of the trial.

Finally, Appellant asserts that the District Court erred in not considering a downward variance based upon the statutory sentencing factors, see 18 U.S.C. § 3553(b), because, he contends, the Court was not aware it had the authority to vary from the Guidelines range if it disagreed with the policy behind the career criminal Guideline. This issue is also meritless.

Appellant did not seek a variance from the advisory Guidelines based upon a policy disagreement; rather, he sought a downward departure from the career offender Guidelines range to the non-career offender range by objecting that the presentence

investigation report over-represented the seriousness of his criminal history. (App. 328-329.) In denying Appellant's objection, the District Court stated that "regardless of whether Defendant's request is treated as one for a departure or a variance, neither is warranted in this case." (App. 5) Because Appellant never asked for a policy-based variance, the District Court recognized that the Guidelines range was advisory, recognized also that it could vary from the career offender Guideline if warranted, and gave consideration to the § 3553(a) factors, this challenge also fails.

III.

For the foregoing reasons, we will affirm the judgment of the District Court.