**UNITED STATES of America,**

v.

**William R. BOUL, Appellant.**

No. 02–1417.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit LAR
34.1(a) Nov. 20, 2002.

Decided Nov. 25, 2002.

Before BARRY, AMBRO, Circuit
Judges, and ACKERMAN,* District
Judge.

* The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

OPINION

BARRY, Circuit Judge.

Following a two-day jury trial in the United States District Court for the Western District of Pennsylvania, appellant William R. Boul was convicted of one count of conspiracy to use extortionate means to collect an extension of credit in violation of 18 U.S.C. §§ 894(a)(1) and (2). The District Court sentenced Boul to 33 months imprisonment and a three year term of supervised release. Boul raises two issues on appeal: (1) whether the District Court erred in admitting into evidence certain unsigned threatening letters allegedly written by Boul, and (2) whether the District Court erroneously held that section 5K2.10 of the United States Sentencing Guidelines did not allow a downward departure from the otherwise applicable sentencing range in Boul's case. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We will affirm as to issue (1) and will dismiss as to issue (2) for lack of jurisdiction.

## I. *Background*

Because we write solely for the parties, we need only briefly recite the essential facts. In August of 2000, Thomas J. Thomas contacted the Pittsburgh office of the FBI and said that he had been threatened by a man named "Mark" concerning gambling debts that he, Thomas, owed Boul; indeed, during the previous five years, Thomas had accumulated over $25,000 in debts to Boul, mostly from losing sports bets placed with him. Beginning at least as early as 1998, Boul frequently contacted Thomas seeking

payment of the escalating debt. Also beginning in 1998,[1] Thomas received in his home mailbox a series of six unsigned, handwritten, hand-delivered letters concerning that debt. The letters all expressed the writer's frustration with Thomas's repeated lies concerning his ability to repay his debt, as well as his attempts to make payments with bad checks. Each of the letters alludes to the author's intention to stop making excuses to unnamed third parties on Thomas's behalf, and each makes veiled threats that these third parties might do something to hurt Thomas. Thomas testified that Boul admitted he wrote and delivered the letters.

In July of 2000, Thomas received a threatening telephone call at his vacation house in Myrtle Beach from an individual who identified himself as "Mark" (Boul's co-defendant Mark Pentland) concerning the money Thomas owed. Unsettled by Pentland's call, Thomas contacted the FBI but declined to wear a wire and told the FBI he would try to "work something out." After again being repeatedly contacted by Boul over the next several months concerning the debt, Thomas received a visit from Pentland at his house on April 23, 2001. Pentland threatened Thomas that if he did not pay the money he owed Boul, Pentland would "cut" Thomas, his wife, his mother, and his children. Over the next two days, Pentland called Thomas twice to reiterate his threats. On April 25, Thomas received a call from Boul warning that Pentland could be dangerous.

After this series of threatening telephone calls, Thomas again contacted the

---

1. Boul contends that Thomas gave inconsistent testimony concerning when he received the six letters at issue. At Boul's trial, Thomas testified that he received the letters between sometime in 1998 and early 2001, while in the trial of Boul's co-defendant, Mark Pentland, Thomas testified that he received the letters in 1998. Precisely when Thomas received the letters affects neither our analysis nor our holding that the letters were properly admitted into evidence.

FBI and agreed to do whatever was necessary to protect his family. The next day, Thursday, April 26, Thomas again received a call from Pentland, recorded by the FBI, in which Pentland threatened Thomas with violence if he did not make a substantial payment on the debt by 6:00 p.m. that evening. Immediately after this call ended, Boul called Thomas from Florida and the two men discussed the debt and the call from Pentland. Over a series of calls that day, Thomas, at the prodding of the FBI, convinced Boul to put off action until Monday, when he would make a good faith payment of part of the debt.

On Monday, April 30, after another series of calls, Boul went to Thomas's house to collect the good faith payment which Thomas had said would be paid by his brother-in-law. When he arrived, Boul assured FBI Special Agent Philip Akins, posing as Thomas's brother-in-law, that he had the ability to control Pentland and that the threats against Thomas's family would cease if the good faith payment was made. Agent Akins then placed Boul under arrest. After being transported to the FBI office for processing and signing a written waiver of his *Miranda* rights, Boul admitted to FBI agents, *inter alia,* that he handled sports bets, that Thomas owed him over $36,000 from sports bets, that he and Pentland had been friends for 17 years, that he owed Pentland $20,000 from covering sports bets, and that he had contacted Pentland to tell him not to contact Thomas after Thomas offered to make the $5,000 good faith payment on April 30.

On May 22, 2001, a grand jury returned a one-count indictment charging Boul and Pentland with conspiracy to use extortionate means to collect an extension of credit in violation of 18 U.S.C. §§ 894(a)(1) and (2). Boul and Pentland were separately tried because of a *Bruton* problem and both were convicted. Two days before trial, Boul moved in limine to preclude the admission into evidence of the six unsigned handwritten letters that Thomas received threatening him concerning his outstanding debts. The District Court denied Boul's motion, and stated that the letters could be sufficiently authenticated by Thomas's testimony that Boul admitted writing and delivering the letters. The District Court also ruled that the letters were admissible because they were probative of Boul's intent.

At his sentencing, Boul asked the District Court to depart downward from the applicable guideline range pursuant to section 5K2.10 of the Sentencing Guidelines, which allows for a District Court to grant a downward departure "[i]f the victim's wrongful conduct contributed significantly to provoking the offense behavior...." Although the District Court understood it had discretion to depart under section 5K2.10, it denied the request.

## II. *Discussion*

### A. *The District Court Did Not Err In Admitting the Unsigned Letters*

In his motion in limine, Boul raised two objections to the admission of the six unsigned letters: (1) Thomas's testimony that Boul admitted to authoring the letters was insufficient to authenticate them under Federal Rule of Evidence 901, and (2) the letters' prejudicial effect outweighed their probative value under Federal Rule of Evidence 403 because Boul wrote some of the letters before the time frame of the conspiracy charged in the indictment. In response, the government argued that letters were admissible under Federal Rule of Evidence 404(b) to show the background of the crime, Boul's role in the charged conspiracy, and Boul's intent in agreeing with Pentland. The District Court ruled that Thomas's testimony that Boul told him he left the letters in his mailbox be-

cause, in Boul's words, "[i]t's something that I have to do" was sufficient to authenticate the letters. The District Court further held: "I also do not find [the letters] outside the scope of the conspiracy because I think they are probative of the alleged intent of Mr. Boul."

On appeal, Boul does not take issue with the District Court's ruling that Thomas's testimony was sufficient to authenticate the letters, but argues that the District Court incorrectly found that the letters were admissible under Rule 404(b) to show Boul's intent, because intent is not an element of using extortionate means to collect an extension of credit.[2] Boul also argues that the District Court erred in admitting the letters under Rule 403 because their prejudicial effect substantially outweighed their probative value. We review the District Court's ruling that the evidence was admissible under Rule 404(b) for abuse of discretion. *United States v. Himelwright*, 42 F.3d 777, 781 (3d Cir.1994). However, because the District Court failed to expressly balance under Rule 403, we may conduct the requisite balancing ourselves. *See United States v. Eufrasio*, 935 F.2d 553, 572 (3d Cir.1991).

■ Boul's argument that the letters were not probative of anything other than his propensity to commit the crime charged is plainly incorrect. Under Rule 404(b), evidence concerning the defendant's prior acts, while inadmissible to prove a defendant's character, is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." Fed. R.Evid. 404(b). In order to convict Boul

of conspiracy, the government had to prove Boul's "intent to achieve a common goal" with Pentland to extort the money Thomas owed. *See United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir.1999). Because each of the letters corroborates Thomas's testimony and Boul's admissions to the police that Thomas owed Boul a significant debt that Boul in turn owed to third parties, the District Court correctly ruled that letters were probative of Boul's intent in agreeing with Pentland. Even if intent were not an element of conspiracy, the letters are also probative of Boul's motive to threaten Thomas, motive also being a permissible purpose under Rule 404(b). Moreover, unlike typical prior bad act evidence which involves events not directly related to the issues on trial, the six unsigned letters directly concern the same debt and the same parties involved in the crime charged in the indictment. We, therefore, conclude that the District Court did not abuse its discretion in admitting the letters, which, in addition to the other reasons as to why they were admissible, provided essential information concerning the background of the relationship between Thomas and Boul. *See, e.g., United States v. Scarfo*, 850 F.2d 1015, 1019–20 (3d Cir.1988).

■ Boul's argument that the letters were unduly prejudicial under Federal Rule of Evidence 403 is similarly without merit. He argues that because the letters were written and delivered as early as 1998, *i.e.*, two years before the time frame of the conspiracy charged in the indictment, they are not strong evidence of

---

**2.** The government contends that because Boul did not expressly argue that the letters were inadmissible under Rule 404(b) in his motion in limine, he waived any 404(b) argument and cannot raise it on appeal. *Cf. United States v. Sandini*, 803 F.2d 123, 126 (3d Cir.1986) (general "relevance" objection insufficient to

preserve argument that evidence was inadmissible under Rule 404(b)). Because we agree with the District Court that the letters were probative of motive, intent, and knowledge on the part of the defendant, and therefore admissible under Rule 404(b), we do not address the waiver issue.

Boul's intent, knowledge, or motive in 2001, while the threatening tone of the letters unduly prejudiced the jury against Boul. Even a cursory review of the letters, however, shows that they deal precisely with the subject matter of the crime with which Boul was charged. As Thomas testified and as Boul admitted to the police, Thomas's debt to Boul preceded Pentland's direct involvement by several years. The letters thus corroborate Thomas's story of Boul's efforts to collect the debt from 1998 to 2001 and Boul's increasing frustration with Thomas's failure to pay. Therefore, even assuming that because the District Court did not expressly conduct the requisite balancing we owe the District Court no deference on this issue, we conclude that, because the letters provided essential corroboration of the key witness's testimony concerning the events which culminated in the crime charged in the indictment, their probative value was not "substantially outweighed" by the potentially prejudicial effect of their threatening tone.

## B. *We Lack Jurisdiction to Review the District Court's Denial of Boul's Motion for a Downward Departure*

 ▮ Boul also argues that the District Court incorrectly interpreted § 5K2.10 of the Sentencing Guidelines as not allowing a downward departure in his case. Section 5K2.10 provides: "If the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstance of the offense." Boul argues that we can and should review the District Court's finding that § 5K2.10 did not allow for a downward departure in his case. We disagree.

In denying Boul's motion for a downward departure, the District Court stated:

I acknowledge for the record that departure under this section can be proper, because the crime committed is classified as a crime of violence. So I have the discretion to depart under 5K2.10. I find after very careful consideration of the positions of the parties and the state of the case law that this is not an appropriate case for departure under that section.

This clear statement by the District Court shows, contrary to Boul's assertion, that the Court believed that it had discretion under § 5K2.10 to depart, but decided that the circumstances of Boul's case did not warrant a departure.

Because the District Court expressly acknowledged its discretionary authority to grant a downward departure, we are without jurisdiction to review its refusal to exercise that authority. *United States v. Sally,* 116 F.3d 76, 78 (3d Cir.1997).

## III. *Conclusion*

For the foregoing reasons, we find that the District Court properly admitted into evidence the letters received by Thomas and that we lack jurisdiction to review the denial of Boul's motion for a downward departure. We will affirm the judgment of the District Court and dismiss the appeal of the sentencing issue for lack of jurisdiction.