

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-14-2004

# USA v. Moore

Precedential or Non-Precedential: Precedential

Docket No. 03-2698

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Moore" (2004). *2004 Decisions.* Paper 438.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/438

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT
———

No. 03-2698
———

UNITED STATES OF AMERICA

v.

DARRICK MOORE,
                              Appellant
———

APPEAL FROM THE UNITED
STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF
PENNSYLVANIA
D.C. Crim. No. 02-cr-00097
District Judge:  The Honorable Yvette
Kane
———

Argued:  February 24, 2004
———

Before: RENDELL, BARRY, and
ROSENN, Circuit Judges
———

(Opinion Filed: July 14, 2004)
———

James J. West, Esq. (Argued)
West Long
105 North Front Street
Suite 205

Harrisburg, PA  17101

<u>Attorney for Appellant</u>

James T. Clancy, Esq. (Argued)
Office of the United States Attorney
Federal Building
228 Walnut Street
P.O. Box 11754
Harrisburg, PA  17108

<u>Attorney for Appellee</u>

———

OPINION OF THE COURT
———

BARRY, <u>Circuit Judge</u>

    We begin with the closing argument
of the prosecutor:

        [S]tanding here
    knowing what date
    [September 10, 2002] today
    is I am very, very reluctant
    to use the term I'm going to
    use, but, frankly, I think this
    defendant warrants that
    term, and that term is
    terrorist.
        There are many
    different kinds of terrorists.
    We all know too well the
    kinds of terrorists that
    caused the attacks of the
    anniversary so-to-speak we
    will mark tomorrow.  But
    there are very different
    kinds of terrorists, and I

think this defendant is one of them.

As you heard the evidence today, I think this evidence can show you that he inflicted terror upon Belinda Newcomer and her family, upon Brittany Newcomer and upon Belinda's son Brandon Newcomer.

You heard testimony that he was forcing kids to do drug transactions for him. What kind of person does that?

173a.

The kind of person that does that, is, of course, a very bad person. Indeed, the government's hyperbolic closing argument crowned its trial strategy of pillorying defendant Darrick Moore before the jury. This fact, and fact it be, is best exemplified by the prosecutor's direct examination of the government's key witness, Belinda Newcomer, through whom he elicited the many ways in which Moore was physically violent, seriously injuring both her and her son. It was also seen when the prosecutor, on redirect examination of Belinda's thirteen year old daughter, Brittany, elicited testimony that Moore punched, kicked and choked her after she refused to sell drugs for him. Given all of this, could anyone disagree with the government that Moore was a bad man if not some species of "terrorist"? Surely the jury did not; it returned a guilty verdict after only twenty-eight minutes of deliberations.

Before placing our stamp of approval on the jury's verdict, however, we must consider the issues that Moore raises on appeal, and that the government, defense counsel,[1] and the District Court simply ignored: Moore was not charged with forcing children or anyone else to deal drugs. Neither was he charged with assault. Nor drug possession. Nor child abuse. Nor terrorism. In fact, Moore was not on trial for anything he may have done to Belinda or her family.

Moore was on trial for arson, in violation of 18 U.S.C. § 844(i), and for possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). Any observer with even an elemental understanding of the Federal Rules of Evidence should have wondered how the wide-ranging testimony about drugs, domestic violence, and child abuse was appropriate in an arson and gun possession trial. Moreover, what justification could the prosecutor have had for raising the specter of September 11th and calling Moore a terrorist? We cannot conceive of any. We will reverse the judgment and sentence, and grant a new trial.

## I. Background

_____

[1]Different counsel was appointed to represent Moore on this appeal, and has ably done so.

On Christmas Eve of 2001, a fire occurred at an apartment building located at 455 North Beaver Street in York, Pennsylvania, and a boy was injured. In mid-February of 2002, Belinda Newcomer, Moore's ex-girlfriend, came forward to identify Moore as the person responsible for the fire. In April, in the U.S. District Court for the Middle District of Pennsylvania, Moore was charged in a two count indictment with arson resulting in personal injury and with possession of a firearm by a convicted felon.

Brittany Newcomer, Belinda's daughter, was the first of four witnesses to testify for the government. On direct examination, Brittany testified that she saw Moore with a gun when he lived with her mother. She further testified that Moore warned her not to tell her mother about the gun or he would hurt her. On cross-examination, defense counsel asked Brittany why she had waited so long before telling her mother about the gun. Brittany replied that she feared being hurt by Moore. On re-direct, the prosecutor asked Brittany if Moore had hurt her in the past. Brittany responded that he had hurt her because she had refused to sell drugs for him. Presumably on the ground that Moore had now been called a drug dealer who used children to sell his drugs, defense counsel objected: "[t]his is far beyond cross-examination, and it's beyond the scope of this trial." The prosecutor countered only that the defense had made an issue of why Brittany had waited so long to tell her mother about the gun. The District Court agreed, and overruled the objection. The prosecutor then proceeded to elicit from Brittany that Moore had punched, kicked, and choked her when she refused to sell drugs. On re-cross, Brittany offered that Moore not only wanted her to sell drugs for him, but also wanted her mother and brother to do so.

Belinda Newcomer took the stand after her daughter. Belinda began her testimony by describing the nature of her relationship with Moore. She testified that he was in anger management classes; that her relationship with him was "very violent"; that he was a "very hostile man"; that he was a habitual drug user; that he threw her down a flight of stairs with the result that she was hospitalized in critical condition; that he repeatedly punched her in the face; that he severely beat her son, cracking three of his ribs and leaving scars on his face and neck; that her son was taken by Child Services for fear that he would again be hurt by Moore; and that she feared for her life and the lives of her children. Defense counsel at no point objected and the District Court did not intervene.

Having set the scene with her description of Moore's violent behavior, Belinda turned to the events which took place on Christmas Eve. She testified that Moore awoke her (the two were at that time living together) and asked her to drive him to a location he did not then disclose. She agreed to do so. Moore first directed Belinda to a gas station, where he filled a red plastic gas can with fuel, and they then drove to 455 North Beaver Street. Moore

got out of the car with the gas can, instructed Belinda to stay in the car, and disappeared behind the building. Minutes later, he came running back, smelling of gasoline, and instructed her to drive them away. As they drove off, Moore remarked to Belinda that he had finally gotten even with "someone he had been angry at and that no one is going to 'f' with 'D.'"

Two other witnesses took the stand. Melissa Strunk Layer, who was then incarcerated on drug charges, testified that she knew Moore from dealing in crack cocaine. She had not seen Moore since having a disagreement with him about the purchase of $20 of crack. Presumably, it was this dispute that motivated the arson: on Christmas Eve of 2001, Melissa Strunk Layer lived at 455 Beaver St., the location of the fire.

Finally, York City Police Officer Troy Cromer offered into evidence a gun retrieved by police from Moore's former place of employment, a gun that fit the description given by Belinda and Brittany of the gun to have been in Moore's possession. Officer Cromer–qualified at trial as an expert investigator of the origins and causes of fire–also testified that the fire was set intentionally, and that a red plastic gas can was recovered from the scene.

The government rested its case, and Moore followed suit without calling any witnesses. Closing arguments were then presented to the jury. The prosecutor launched into his closing argument by calling Moore a terrorist. Again, no objection was made by defense counsel.

The Court then instructed the jury, and the verdict was returned in twenty-eight minutes.

## II. Discussion

Moore urges us to overturn his conviction on two grounds.[2] First, he contends that the District Court improperly admitted the testimony of Brittany and Belinda Newcomer concerning his alleged prior bad acts, in violation of Federal Rule of Evidence 404(b).[3] Second, he contends

---

[2] Moore filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[3]

Federal Rule of Evidence 404(b) provides:

> Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon
>
> (continued...)

that the prosecutor's closing argument unfairly prejudiced him.

## A.    Standard of Review

The Federal Rules of Evidence require a timely and specific objection to evidence erroneously admitted. Fed. R. Evid. 103(a)(1). Where an objection is properly made, we review a district court's ruling for abuse of discretion. *United States v. Givan*, 320 F.3d 452, 463 (3d Cir. 2003). Where, however, a party fails to object in a timely fashion or fails to make a specific objection, our review is for plain error only. *United States v. Boone*, 279 F.3d 163, 188 (3d Cir. 2002). *See also United States v. Sandini*, 803 F.2d 123, 126 (3d Cir. 1986) (holding that failure to object with specificity does not preserve a Rule 404(b) issue for appeal). It is well-settled that to establish plain error, a defendant must show "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but

only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States,* 520 U.S. 461, 467 (1997) (citations and quotation marks omitted). *See also United States v. Plotts*, 359 F.3d 247, 249 (3d Cir. 2004) ("Under plain error review, we may grant relief if (1) the District Court committed an error, (2) it was plain, and (3) it affected substantial rights of the defendant.") (citation and quotation marks omitted).

Similarly, a failure to sustain an objection to a prosecutor's closing argument is typically reviewed for abuse of discretion. *United States v. Molina-Guevera*, 96 F.3d 698, 703 (3d Cir. 1996). But, again, defense counsel never said a word when his client was likened to one of the September 11th terrorists, nor did the District Court. And so, again, the standard of review is plain error. *United States v. Tiller*, 302 F.3d 98, 105 (3d Cir. 2002).

## B.    Plain Error Pervaded the Trial

Inadmissible evidence and highly inflammatory statements came rolling in unimpeded at Moore's trial, without any hesitation by the prosecutor, complaint by defense counsel, or correction by the District Court. Indeed, at only one point when irrelevant but enormously prejudicial evidence and wholly inappropriate statements came before the jury did

---

[3](...continued)
request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

defense counsel object,[4] and that objection was not at all specific. His failure to object, of course, did not relieve the prosecutor of his duty to comply with the Federal Rules of Evidence and, even more importantly, rules of fundamental fairness. There was a serious breakdown here.

As for the evidence of Moore's "Other Crimes, Wrongs, or Acts," i.e., the Rule 404(b) evidence, which came in principally through Belinda and Brittany Newcomer, let us be quite clear. We are *not* reviewing the District Court's decision to admit this evidence, because the evidence came in bereft of any motion to admit; bereft of any prior notification of the general nature of the Rule 404(b) evidence the government intended to introduce; bereft of any objection by defense counsel; and bereft of any exercise of control on the part of the District Court. Indeed, Rule 404(b) never once came up during the course of trial until the District Court *sua sponte* (because neither defense counsel nor the government had submitted a proposed jury instruction as to 404(b)), asked during the charge conference whether there was any need to instruct the jury regarding Moore's "prior crimes or bad acts." Counsel both agreed that that would be appropriate.

When the instruction was given to the jury, however, the District Court stated that the testimony that Moore "committed some acts other than the ones charged in the indictment" was permitted "only as background to the events at issue here," and could be considered only for that purpose and not as evidence that he committed the crimes with which he was charged. Parenthetically, we are unaware of any case under Rule 404(b) that would permit the use of the type of evidence seen here as "background," and the government has proffered none. At the conclusion of the charge, the prosecutor asked the District Court to further instruct the jury, as the government puts it here, that "many of [Moore's] statements and actions provided proof of motive for the arson." Appellee's Br. at 11-12. Defense counsel, albeit "reluctantly," agreed, and the District Court so instructed the jury.

Putting aside the virtual silence as to Rule 404(b) during the course of trial, in order to be admissible under 404(b), "(1) the evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its potential for unfair prejudicial effect under Rule 403; and (4) the Court must charge the jury to consider the evidence only for the limited purpose for which it is admitted." *United States v. Vega*, 285 F.3d 256, 261 (3d Cir. 2002) (citing, among others, *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)). The evidence here, at least that

---

[4]The sole objection, difficult as it may be to believe, was during Brittany's re-direct, to wit: "This is far beyond cross examination, and it's beyond the scope of this trial." 30a.

evidence elicited from Belinda,[5] fails each and every one of these requirements. Rather, what is crystal clear is that the evidence came in for one reason and one reason only: to demonstrate Moore's propensity to act in a particular manner, i.e., to be a very violent man, whose violence made the arson and the gun possession more likely. Admitting evidence of other bad acts for this purpose is, of course, prohibited. *See, e.g., Ansell v. Green Acres Contr. Co*, 347 F.3d 515, 520 (3d Cir. 2003) ("Rule 404(b) . . . prohibits the admission of other acts evidence for the purpose of showing that an individual has a propensity or disposition to act in a particular manner.").

Were there any doubt that admitting evidence of the numerous other bad acts alleged to have been committed by Moore would alone require reversal, the compounding effect of the prosecutor's inflammatory closing argument forecloses any argument that reversal is not warranted. Thus, on the eve of the one year anniversary of the September 11th terrorist attacks, the prosecutor called Moore a terrorist. No, said the prosecutor, Moore was not one of *those* terrorists, but

"there are very different kinds of terrorists, and I think this defendant is one of them." Why? Because "he inflicted terror upon Belinda Newcomer and her family, upon Brittany Newcomer and upon Belinda's son Brandon Newcomer. . . . [H]e was forcing kids to do drug transactions for him. What kind of person does that?" The prosecutor marshaled the most damning of the 404(b) evidence and emphasized it to the jury. Why should the jury convict? Because, he explained, of what Moore did to the Newcomers. He is, in a nutshell, a bad man who should be stopped at all costs.

Moore was not, of course, on trial for anything he did to the Newcomers. But yet again, there was no objection from defense counsel, and the District Court did not intervene. Indeed, the Court, in the course of denying Moore's motion for a new trial based on the prosecutorial misconduct inherent in the closing argument, remarked:

> [T]he government produced ample evidence which, if believed by the jury, would support [the prosecutor's] argument that Defendant used terror to coerce [and the] characterization of Defendant as one who used terror to coerce was within acceptable bounds of advocacy for conclusions the jury could adopt from the evidence presented.

---

[5]Given the prejudicial nature of the testimony elicited from Belinda on direct examination, we do not pause to also discuss the challenged portion of Brittany's testimony nor to determine whether defense counsel opened the door to the purported rehabilitation of Brittany that followed.

But the evidence that the Court found "acceptable" was prejudicial, administering the death blow to the closing argument, which tracked that evidence.

We have reversed convictions where "[t]he object, or at least effect, of this disproportionate emphasis by the prosecution . . . was to portray [the defendant] as . . . violence-prone . . . [and] a danger to society and who needed to be removed for the protection of the public." *United States v. Himelwright*, 42 F.3d 777, 786 (3d Cir. 1994). In *Himelwright*, although operating under an abuse of discretion standard of review, we reversed a conviction due to concerns that the government's emphasis on 404(b) evidence in its closing argument tainted the trial in two regards: "First, it had the potential for frightening the jury into ignoring evidence that otherwise might have raised a reasonable doubt . . . . Second, if the jury was persuaded that [the defendant] was violence-prone by character, it might have inferred that he intended violence in this particular instance. That inference is precisely what Rule 404(b) prohibits." *Himelwright*, 42 F.3d at 786 n.8. *See also United States v. Morley*, 199 F.3d 129, 137-38 (3d Cir. 1999) ("This frontal assault upon the defendant's character is simply not appropriate under our system of laws, and the trial court abused its discretion in admitting it."). Plain error was committed here.

First, there can be no doubt that error was committed. The Federal Rules of Evidence are clear and unambiguous on this matter: irrelevant and prejudicial evidence is inadmissible. The evidence at issue here–Moore's alleged violence, drug use, and general criminal proclivity–was highly prejudicial and wholly irrelevant to the arson and gun possession charges he faced. Second, the error was plain, stigmatizing Moore for behavior unconnected to those charges. Finally, we are certain that the error affected Moore's substantial rights. We cannot know, given the evidence that came in, whether Moore was convicted because the jury believed him to be an arsonist and the illegal possessor of a gun, or because it thought him to be a violent and dangerous man, a "terrorist" of sorts. We are inclined to believe the latter. Such uncertainty in the face of plain error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson*, 297 U.S. 157, 160 (1936). *See generally United States v. Olano*, 507 U.S. 725, 734-36 (1993) (discussing plain error).

## III. Conclusion

Whether we apply the constitutional harmless error doctrine that requires a showing by the government that the error was harmless beyond a reasonable doubt or the non-constitutional harmless error doctrine that requires a showing that it is highly probable the error did not contribute to the judgment, *see Molina-Guevara*, 96 F.3d at 703, we conclude that singly or in combination, the admission of the Rule 404(b) evidence and the prosecutor's

8

closing argument require that the judgment and sentence be reversed for plain error, and the case remanded to the District Court with directions to grant Moore a new trial.

RENDELL, Circuit Judge, Concurring.

I agree with the view that plain error occurred here by virtue of the admission of evidence that villainized Moore based on prior bad conduct that was totally unrelated to the offenses charged. I write to decry situations in which the deficient performances of both the prosecutor and defense counsel lead to a predicament like the one faced by the trial judge here, namely, when such evidence is improperly presented by the prosecution, and when defense counsel improperly fails to object. While I agree that the trial judge should have taken action here based on the exceptionally egregious nature of the violations of Rule 404(b), nonetheless, in typical cases trial judges instinctively, and usually quite properly, let the adversary process unfold. It is understandable that judges are inclined to leave evidentiary issues to the attorneys to challenge or not, as they see fit, because ours is essentially an adversary system, and judicial interference can have tactical implications.

The instant situation, however, differs in degree from a normal case. The sheer heft of the truly damaging and irrelevant conduct, catalogued in the majority opinion, quite probably diverted the jury's attention from the relevant issues of proof. There was not just one error; there were strings of testimony focused on inadmissible and irrelevant prior acts. And this testimony was not overshadowed by overwhelming other evidence of Moore's guilt; in fact, the other substantive evidence related to the crimes that were relevant at trial was relatively thin, consisting primarily of Belinda's testimony and the identification of a red gas can. Accordingly, the trial judge's failure to act amounts to plain error in large measure due to the predominance of the problematic evidence that was presented to the jury.

While a trial judge should not let this happen, it is far easier for us to say so from our vantage point, with the twenty-twenty hindsight that we enjoy on appeal, than it is for the judge to determine mid-trial at what point enough is enough. It would be a far better thing for counsel – prosecution and defense alike – not to put judges into this predicament in the first instance, by adhering and policing adherence to the Rules of Evidence. Here, counsel utterly and inexplicably failed to do so.