NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 09-2017

———

UNITED STATES OF AMERICA

v.

RUDOLPH ISLEY; ELAINE ISLEY,
Appellants

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-99-cv-04449)
District Judge: Honorable William J. Martini

———

Submitted Under Third Circuit LAR 34.1(a)
July 2, 2010

Before: SLOVITER, BARRY and HARDIMAN, Circuit Judges

(Filed: July 7, 2010)

———

OPINION

———

SLOVITER, *Circuit Judge*.

This is the second appeal to this court by Rudolph Isley and his wife Elaine (the "Isleys") in their extended dispute with the Internal Revenue Service ("IRS"). Many of the background facts are set forth in our original opinion, *United States v. Isley*, 203 F. App'x 406 (3d Cir. 2006), and we repeat only what is necessary for this opinion. The Isleys argue, in essence, that various payments made to the IRS by the trustee of a consolidated bankruptcy which included Rudolph Isley were not properly attributed and that as a result the IRS may have miscalculated Rudolph's present tax liability. The District Court found that all of the relevant payments were adequately accounted for and dismissed the Isleys' complaint.

## I.

### Background

Rudolph, Ronald, and O'Kelly Isley were members of a music group called the Isley Brothers. In 1984, each brother filed a petition for bankruptcy under Chapter 11, which was later converted to a Chapter 7 proceeding. The individual estates were consolidated. In 1991, the bankruptcy court entered a consent order determining the extent of the IRS's claims for income taxes, pre-petition interest and penalties against the Isley brothers for certain years, and the bankruptcy trustee paid those amounts from the assets of the consolidated estate. Over the next few years, the trustee remitted to the IRS seven checks totaling $3,086,338.60 (the "post-consent order" "money" or "checks") to

be applied to subsequent tax liabilities of the Isley brothers and the consolidated estate.

In 1999, the government initiated this proceeding against the Isleys to collect post-petition interest, as well as post-petition income taxes. The District Court granted the IRS summary judgment regarding the Isleys' liabilities. They appealed, arguing, as relevant here, that there was a genuine issue of material fact with respect to the IRS's allocation of the trustee's payments. We remanded because of our "discomfort" with regard to "the unsettled matter of the IRS's allocation of the trustee's payment of $1,683,015.70." *Isley*, 203 F. App'x at 409.

On remand, the IRS offered into evidence IRS Form 4340s (Certificates of Assessments, Payments, and Other Specified Matters),[1] showing that three of the seven post-consent order checks, adding up to $1,659,826.78, were attributed to the tax liability of the consolidated estate for 1991. It follows that the IRS accounted for the money from three post-consent order checks that added up to approximately the $1,683,015.70 of post-consent order money that was not attributed to the brothers' accounts. Although the total of those checks was $23,188.92 less than the amount that the Isleys had asserted was unaccounted for, i.e., $1,683,015.70, neither party substantiated the existence of that

---

[1]A "Certificate of Assessments, Payments and Other Matters, . . . is a computer generated form that reflects the taxes assessed to and paid by the taxpayer in a particular year." *United States v. Jimenez*, 513 F.3d 62, 79 n.4 (3d Cir. 2008). The parties acknowledge that these documents are regularly used as evidence in tax cases.

3

amount as the District Court permitted, and the IRS moved the District Court to determine that all of the post-consent order payments had been properly accounted for, and to re-enter judgment on its behalf.

In their response, the Isleys submitted an affidavit from an expert who stated that the government had "provided transcripts of its records that disclosed that the first three payments aggregating $1,659,826.78 were definitively allocated to pay [the consolidated estate's tax] liabilities . . . [but that the] papers do not provide proof of the allocation of the [remaining] $1,426,482.05, balance." App. at 119. Thus, the Isleys argued that the IRS needed to account for the entirety of the money distributed by the post-consent order checks.

In its reply, the IRS pointed out that the $1,683,015.70 figure was one that the Isleys themselves had offered to this court as the amount of unaccounted-for funds and that the Isleys had never explained how they had arrived at that sum, and that the Isleys had already conceded that $1,756,815.72 of the post-consent payments were attributed to the brothers' tax liabilities, thus foreclosing reexamination of that issue. The government additionally asserted that the money from the remaining four checks, totaling $1,426,482.05, was in fact accounted for by reference to the answers to interrogatories provided to the Isleys by the government.

For its part, the District Court pointed out that this court had remanded for resolution of "how the [IRS] allocated $1,683,015.70 in payments allegedly remitted by"

4

the bankruptcy trustee. App. at 2. The Court then held that the government had properly demonstrated the correct allocation of $1,659,826.78 of those payments. As neither party came forward with evidence regarding the difference of $23,188.92, the District Court ordered the case dismissed.

## II.

## Analysis[2]

We find no error.

The Isleys argue that the District Court erred in considering as summary judgment evidence the IRS Form 4340s because those forms were not properly self-authenticating under Federal Rule of Evidence 902 (self authentication) and/or proved under Federal Rule of Civil Procedure 44 (proving an official record). Because the Isleys did not object to these documents before the District Court, our review is for plain error. *See United States v. Moore*, 375 F.3d 259, 262 (3d Cir. 2004); Fed. R. Evid. 103(d).[3] The government concedes that the Form 4340s "lacked the seal needed for self-authentication under Federal Rule of Evidence 902," Appellee's Br. at 31, and argues instead that there

---

[2]The District Court had jurisdiction under 28 U.S.C. §§ 1340 and 1345, and this court has jurisdiction under 28 U.S.C. § 1291.

[3]The Isleys additionally acknowledge that, on occasion, some courts of appeals have held that a failure to object to similar alleged evidentiary errors constitutes a waiver. *See, e.g, Gasaway v. Nw. Mut. Life Ins. Co.,* 26 F.3d 957, 960 (9th Cir. 1994). The government, however, does not press a waiver argument.

was probative evidence sufficient to support "a finding that the matter in question is what its proponent claims," Fed. R. Evid. 901(a). This court has held that "circumstantial evidence may . . . suffice to authenticate a document . . . [and that] [t]he burden of proof for authentication is slight . . . . [as] [a]ll that is required is a foundation from which the fact-finder could legitimately infer that the evidence is what the proponent claims it to be." *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 928 (3d Cir. 1985) (internal citations and quotations omitted).

Here, the Isleys make no effort to cast doubt on the actual authenticity of the forms. Moreover, the Isleys' own expert did not question their appearance or substance in any way. Attached to the forms are Certificates of Official Record attributed to Kathleen Bushnell, a Field Director for the IRS; the forms are signed by Denise Bradley, an Accounting Operations Manager at the IRS. The Department of Justice attorney representing the IRS in this case submitted an affidavit asserting that the documents are what they appear to be. Therefore, we cannot hold that the District Court plainly erred in relying on the Form 4340s. Even if there were plain error, we would still decline to remand as the Isleys have mustered no showing of actual prejudice regarding the authenticity of the forms.

The Isleys additionally assert in a footnote that the District Court erred by considering the government's answers to interrogatories, apparently because the information in the answers was not based on the personal knowledge of their creator and

because the answers were not properly authenticated. As an initial matter, it is not clear whether the District Court relied on the answers to interrogatories in its decision. In any event, because the Isleys did not object to the admissibility of the answers either, we again review for plain error.

The Isleys fail to respond to the government's argument that the answers to interrogatories were in fact "declared true under penalty of perjury by Bruce Clark, an IRS technical support advisor who was familiar with the IRS's application of the bankruptcy payments." Appellee's Br. at 33. Moreover, the Isleys themselves submitted the interrogatories as an attachment to a declaration made in support of their own motion for summary judgment, and therefore invited any error the District Court may have made in relying on them as authentic. *See United States v. Console*, 13 F.3d 641, 660 (3d Cir. 1993). Further, the Isleys offer nothing but speculation that the interrogatories are anything but authentic and accurate, or that their admission was otherwise prejudicial in any meaningful way.

The District Court reviewed the Form 4340s and held that $1,659,826.78 of the $3,086,338.60 submitted by the trustee to the IRS was in fact accounted for as having been attributed to the tax liabilities of the consolidated estate. The Isleys' remaining argument, essentially, is that the money from the other four post-consent order checks was not satisfactorily accounted for. As the government points out, however, that question was not presented to the District Court on remand because the Isleys had already

conceded that the remaining money was accounted for as attributed to the tax liabilities of the brothers. *Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419, 423 (3d Cir. 2008) ("It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." (citation and quotation omitted)).

To be sure, there are some incongruities in the record, such as the difference of $23,188.92 between the amount of money that the Isleys asserted was unaccounted for on the former appeal and the three checks that the IRS showed on remand as having been attributed to the tax liabilities of the estate. This discrepancy is the result of the fact that the sums that the Isleys proffered to this court on the first appeal were erroneous. *See Isley*, 203 F. App'x at 407. In fact, it appears that the Isleys erred in calculating both the supposedly unaccounted for money ($1,683,015.70 as opposed to $1,659,826.78) and the amount of money attributed to the brothers' liabilities ($1,756,815.72 as opposed to about $1,426,511.82).

Despite these incongruities, we will not allow the Isleys to use their own mistakes to reopen an issue that they conceded, especially when they have shown no appreciable prejudice. In the former appeal we accepted as true and relied upon the Isleys' general concession that all of the post-consent order money, except for $1,683,015.70, was accounted for. We therefore remanded solely to resolve the "unsettled matter of the IRS's allocation of the trustee's payment of [the] $1,683,015.70," *id.* at 409, even while

recognizing the Isleys had made a mistake somewhere in their calculations. As the government argues, "[u]nder the remand order, the District Court's summary judgment establishing taxpayer's outstanding liability would [therefore] stand unaltered, unless it were determined on remand that all or some of the $1,683,015.70 should have been, but was not, applied to taxpayer's account." Appellee's Br. at 22.

"The law of the case doctrine 'limits relitigation of an issue once it has been decided' in an earlier stage of the same litigation." *Hamilton v. Leavy*, 322 F.3d 776, 786-87 (3d Cir. 2003) (quoting *In re Cont'l Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir. 2002)). Although that doctrine is intended to promote finality, consistency, and judicial economy, *id.* at 787, it nonetheless allows for reconsideration of an issue when there exists new evidence, supervening law, or clear error that would create manifest injustice in the earlier decision, *In re City of Phila. Litig.*, 158 F.3d 711, 718 (3d Cir. 1998) (citation omitted). However, "if the evidence at the two stages of litigation is 'substantially similar,' or if the evidence at the latter stage provides more support for the decision made earlier, the law of the case doctrine will apply." *Hamilton*, 322 F.3d at 787 (citation omitted). Even if the government's accounting deviates from the totals of accounted for and unaccounted for post-consent order money asserted by the Isleys on the former appeal – as it necessarily must in order to be accurate – the Isleys have offered no new evidence of manifest injustice or shown that re-litigation of this issue would serve any purpose at all.

9

**III.**

**Conclusion**

For the reasons stated above, this court will affirm the judgment of the District Court.