NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3008
_____

GOVT. OF THE V.I.

v.

GLENFORD U. PRINCE, JR.,

Appellant
_____

On Appeal from the District Court of the
Virgin Islands - Appellate Division
(D.C. No. 05-cr-0037)
Chief Judge: Hon. Curtis V. Gomez
District Judge:  Hon. Raymond L. Finch
Superior Court Judge: Hon. Patricia D. Steele
_____

Argued
May 9, 2012

Before:  CHAGARES, JORDAN, and COWEN, *Circuit Judges*.

(Filed June 27, 2012)
_____

Dolace McLean   [ARGUED]
Visions Law Firm
9617 Estate Thomas – 2nd Fl.
St. Thomas, VI   00802
      *Counsel for Appellant*

Tiffany V. Monrose   [ARGUED]
Office of Attorney General of Virgin Islands
Department of Justice
34-38 Kronprindsens Gade, GERS Complex, 2nd Fl.
St. Thomas, VI   00802
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Glenford Prince ("Prince") appeals his conviction in the Superior Court of the Virgin Islands, Division of St. Thomas and St. John, for second-degree murder, third-degree assault, and using a dangerous weapon to commit a crime.  The case is before us on appeal from the judgment entered by the Appellate Division of the District Court of the Virgin Islands of the United States.[1]  Prince argues that the trial court improperly admitted evidence of a prior stabbing that he had committed.  Because the trial court did not err in that respect, we will affirm.

_____

[1] After Prince took his appeal to the Appellate Division, the Supreme Court of the Virgin Islands was established and vested with appellate jurisdiction over the Superior Court of the Virgin Islands.  *Edwards v. HOVENSA, LLC*, 497 F.3d 355, 359 n.2 (3d Cir. 2007).  The Appellate Division will cease to exist following resolution of the final pending case.  *Id.*

## I. Background

### A. *Facts*

Prince lived in an apartment on St. Thomas with his mother, Valarie Meyers, and his siblings Nonceba Prince, Isaiah Pereira, and Valandiah Prince.[2] On the morning of January 1, 2004, Meyers left home to drive Nonceba to work and took nine year-old Valandiah with her for the ride. She left Prince, then 22 years old, and Isaiah, then 17 years old, alone at home. After Meyers left, Isaiah and Prince began arguing over the use of cell phone minutes. The fight quickly became violent and the brothers struggled until Isaiah left the home. Prince locked the door, but Isaiah soon returned and began pounding on the door, demanding that Prince let him back in. Prince armed himself with a BB gun and opened the door. Isaiah rushed in, punching Prince as he entered. A struggle ensued that ultimately left Isaiah stabbed twice with a kitchen knife, once in the chest. Neighbors called the police, who, at 9:30 a.m., found Isaiah lying in a pool of blood in the apartment. He died as a result of his wounds.

Meyers gave the police a statement indicating that her sons had previously threatened each other with knives and that Prince had previously stabbed his other brother, Nonceba, in the leg. Prince had, in fact, been previously tried for stabbing Nonceba, but was acquitted after Nonceba testified at that trial that Prince had not stabbed him.

---

[2] For ease of reference, we will refer to Nonceba, Isaiah, and Valandiah by their first names, intending no undue familiarity or disrespect.

3

B.    *Procedural History*

Prince was arrested and charged with second-degree murder, under 14 V.I.C. §§ 921, 922, assault in the third degree, under 14 V.I.C. § 297, and two counts of possessing a dangerous weapon during the commission of a crime of violence, under 14 V.I.C. § 2251.  At trial in the Superior Court in February 2004,  during the government's case-in-chief, Nonceba testified that he was close to Isaiah, but not to Prince, and that his mother had warned him that he would be ostracized by the family if he testified against Prince.  The defense called Meyers to testify, and, during cross-examination, the prosecutor asked her if she had told investigators that Prince had previously stabbed Nonceba in the leg.  The prosecutor read a portion of Meyers's police statement where she had indeed indicated that Prince stabbed Nonceba in the leg.  The prosecutor then asked Meyers if she had told Nonceba to lie about that stabbing at the prior trial so that Prince would not be convicted.  Meyers denied the accusation.  Prince later took the stand and testified that Isaiah had attacked him.  Prince also testified that he did not know how Isaiah had been wounded by the knife but that the knife and Isaiah fell to the ground during the fight, suggesting that Isaiah must have rolled on the knife.  During cross-examination, Prince denied stabbing Nonceba.  The government called Nonceba as a rebuttal witness and Nonceba testified that, despite his testimony at the earlier trial, Prince had stabbed him in the leg.  Nonceba also testified that he had lied at that time because his mother said she would disown Nonceba if he put Prince in jail.

The jury ultimately convicted Prince on all counts and Prince appealed to the District Court of the Virgin Islands, Appellate Division, arguing that the trial court erred

4

in allowing Nonceba's rebuttal testimony because the probative value of the evidence was outweighed by its prejudice to Prince and that the trial court erred in allowing Nonceba to testify since he had previously perjured himself. The Appellate Division rejected those arguments and affirmed Prince's conviction. Prince timely appealed.

## II.    Discussion[3]

The only issue that Prince raises on appeal is that the trial court wrongly allowed the government to offer rebuttal testimony from Nonceba that Prince had previously stabbed him in the leg.[4]   Prince argues that the testimony was irrelevant propensity evidence, the probative value of which was substantially outweighed by the danger of unfair prejudice. He also argues that the admission of Nonceba's rebuttal testimony violated his due process rights.

---

[3] The Appellate Division had jurisdiction pursuant to 48 U.S.C. § 1613a(a). We have jurisdiction pursuant to 48 U.S.C. § 1613a(d). Because Prince did not object to the admission of Nonceba's rebuttal testimony on Rule 404 grounds, which is the fundamental argument he now raises, we review for plain error the trial court's decision to admit that testimony. *United States v. Olano*, 507 U.S. 725, 734-35 (1993). Under plain error review, we reverse the trial court only if the error was clear, affected substantial rights, and affected the outcome of the case. *Id.* We give no deference to the decision of the District Court of the Virgin Islands, Appellate Division, but instead undertake the same review of the trial court's ruling that the Appellate Division conducted. *Tyler v. Armstrong*, 365 F.3d 204, 208 (3d Cir. 2004) ("In reviewing the Appellate Division's orders, this Court should review the trial court's determination using the same standard of review applied by the first appellate tribunal." (citation and internal quotation marks omitted)).

[4] While Prince's alleged prior stabbing of Nonceba was raised during other parts of the trial, Prince confined his briefing to challenging the admission of Nonceba's rebuttal testimony, and he confirmed during oral argument that his challenge is to that evidentiary decision.

5

Rule 402 generally provides that relevant evidence is admissible. *See* Fed. R. Evid. 402 ("Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court."); Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). Rule 404(b)(1), however, provides that evidence of another act cannot be introduced to prove a person's propensity to commit the crime charged. *See* Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). Rule 404(b)(2) provides an exception to that general rule when evidence of the other act is introduced for some purpose other than proving character or propensity, such as to demonstrate absence of mistake or lack of accident. *See* Fed. R. Evid. 404(b)(2) ("This evidence [of a crime, wrong, or other act] may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."). But, even if evidence of another act can be used for a permissible purpose, it may be excluded if its probative value is outweighed by the risk of unfair prejudice. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

Here, Prince argues that Nonceba's testimony of the prior stabbing was not relevant to the crime charged. Prince also argues that even if relevant, the evidence was impermissible propensity evidence that should have been excluded under Rule 404(b)(1). Finally, Prince argues that even if relevant and permissible under Rule 404(b)(2), the testimony should have been excluded pursuant to Rule 403 because the probative value of the evidence was substantially outweighed by the risk of unfair prejudice.

Prince's arguments fail because the evidence is relevant to the crime charged, there was a proper 404(b)(2) purpose for the admission of the evidence, and its probative value is not substantially outweighed by the risk of unfair prejudice. Prince testified that the stabbing of Isaiah was an accident or mistake. The government was thus permitted to offer a rebuttal witness to demonstrate that there was no such accident or mistake, and the prior stabbing is relevant to that issue.[5] At trial and on appeal, Prince argues that because

---

[5] When Prince was tried for Nonceba's stabbing, Nonceba testified that he somehow fell on the knife and that Prince did not attack him. Nonceba admitted at the trial now under review that he previously lied under oath regarding the earlier stabbing. Prince appears to argue that because Nonceba is an admitted perjurer, he should not have been permitted to testify. While Nonceba did admit to perjuring himself, it does not mean that the trial court erred in admitting his testimony. Instead, jurors are entitled to believe or discount such testimony. *See United States v. Margolis*, 138 F.2d 1002, 1004 (3d Cir. 1943) ("The appellant contends that because [the witness] was an admitted perjurer his testimony should not have been considered. Even a convicted perjurer, however, may testify competently. The jury must determine his credibility."); *see also United States v. Greenberg*, 419 F.2d 808, 809 (3d Cir. 1969) (rejecting a defendant's argument on appeal that a perjurer should not have been allowed to testify against him); *cf. United States v. Zizzo*, 120 F.3d 1338, 1347 (7th Cir. 1997) ("[E]ven the most dastardly scoundrels, cheats, and liars are generally competent to testify.").

As our dissenting colleague observes, the government during summation characterized Nonceba's stabbing in ways that may have urged the jury to draw an inappropriate propensity inference. The sole issue before us on appeal, however, as

he was acquitted of the Nonceba stabbing, evidence of it could not properly be introduced in the trial for Isaiah's murder. As a matter of law, that is incorrect. The prior acquittal does not preclude the government from introducing evidence of that act. *See, e.g.*, *Dowling v. United States*, 493 U.S. 342, 348-49 (1990) (permitting introduction of evidence relating to a crime that the defendant had previously been acquitted of committing).

Prince also argues that the trial court erred because the evidence should have been excluded under Rule 403. While the trial court did not expressly conduct a Rule 403 balancing, the Appellate Division determined that the probative value of the evidence

---

Prince confirmed at oral argument, is the admission of Nonceba's rebuttal testimony, *see supra* note 4, and we cannot agree with the dissent that the admission of that testimony "relies on the impermissible character inference that [Prince] has a propensity to use knives for acts of violence." (Dissent at 2.) Prince testified that Isaiah's wounds were caused when "the knife … fell onto the ground, and … [Isaiah] fell to the ground [with] the knife, [and] I back[ed] away from him." (App. at 841.) Once Prince claimed accident and mistake, he opened the door for the government to rebut his testimony by introducing evidence that Prince had also deliberately stabbed Nonceba during a fight. Rather than being used to prove Prince's character, it was used in support of the position that Prince's stabbing of Isaiah was deliberate, not a mistake or accident. This is not an argument that "once a stabber, always a stabber." Nor is it an argument we came up with when the government did not, as the dissent indicates. From the start of the trial, the government argued that the "404(b) evidence [of the prior stabbing of Nonceba] … would show … absence of mistake." (App. at 33.) That position continued through closing arguments when the government told the jury that the prior stabbing of Nonceba "cannot be used to determine whether or not [Prince] acted in conformity" with that event but "can be used to show absence of mistake." (App. at 1320.) As Rule 404(b) envisions, that evidence allowed the jury to fairly weigh the credibility of a claim of mistake or accident by putting the claim in the context of past events that showed noteworthy coincidences.

was not outweighed by the risk of unfair prejudice.[6] We agree. The evidence of the prior stabbing of Nonceba is highly probative of absence of mistake or accident. *See* Fed. R. Evid. 404(b) (stating that "other acts" evidence is admissible to show "absence of mistake or accident"). The evidence, though, also carries the risk of prejudice – that the jury will infer guilt based on character or reputation, particularly since both stabbings involved Prince's brothers. However, that risk of prejudice is of the same nature as any other case where other acts are admitted under Rule 404(b) and does not bar the admission of the highly probative evidence involving Nonceba's stabbing. *See, e.g.*, *Gov't of the V.I. v. Harris*, 938 F.2d 401, 420 (3d Cir. 1991) (holding that evidence of other bad acts (attempted stabbing and strangling) by a defendant were highly probative because they demonstrated absence of accident and that the probative value was not outweighed by the risk of unfair prejudice).[7] It was not plain error to admit Nonceba's rebuttal testimony.

---

[6] Before admitting evidence under Rule 404(b), a trial court should conduct a Rule 403 balancing. *Sampson*, 980 F.2d at 889. Where the record does not expressly demonstrate whether the trial court conducted such a balancing, we must either decide that the trial court implicitly performed the balancing or undertake our own. *See Glass v. Phila. Elec. Co.*, 34 F.3d 188, 192 (3d Cir. 1994) ("[W]e must confront the trial court's failure to articulate its balance between the probative value and the prejudicial effect of the evidence in one of two ways: either we decide the trial court implicitly performed the required balance; or, if we decide the trial court did not, we undertake to perform the balance ourselves." (citation and internal quotation marks omitted)). It may be that the trial court did implicitly make the balancing, but, in any event, we agree with the assessment made by the Appellate Division.

[7] Prince also argues that his due process rights were violated by the admission of Nonceba's rebuttal testimony. That argument, however, is based on the premise that there was no proper purpose for the admission of the evidence. Since Nonceba's testimony did have a proper 404(b) purpose, Prince's argument is without merit. To the extent that the due process argument is based on Prince's prior acquittal, there is no due

**III. Conclusion**

For the forgoing reasons, we will affirm.

---

process violation where evidence of another bad act is admitted, even if the defendant was acquitted. *See Dowling*, 493 U.S. at 348-49 (1990).

*Govt. of the V.I. v. Glenford U. Prince, Jr.,* No. 11-3008, dissenting.

COWEN, *Circuit Judge*, dissenting.

For "[e]vidence of a crime, wrong or other act" to be admitted pursuant to Federal Rules of Evidence 404(b) it must fit into a chain of logical inferences that lead to a permissible purpose, none of which can be that because the defendant acted in a particular way on a prior occasion he was more likely to have committed the crime. *U.S. v. Sampson*, 980 F.2d 883, 887 (3d Cir. 1992). The government, the lower courts, and the majority rely on that exact forbidden inference to conclude that the evidence that defendant stabbed Nonceba Prince makes it more likely that defendant intentionally stabbed Isaiah Pereira. And, in the only reference to this evidence during closing argument, the government urged the jury to draw this forbidden inference by stating "the only brother in that house that has a conviction for a felony that has been tried for a stabbing with a knife and that is in this court for yet another stabbing is Glenford Prince."[1] Because there is no permissible purpose for this evidence and its admission constituted plain error, I respectfully dissent. The trial court's judgment should be

---

[1] Contrary to the majority's statement that this evidence was "used in support of the position that Prince's stabbing of Isaiah was deliberate, not a mistake or accident," (Opinion n. 5 ) at no time while in the presence of the jury did the government advance this argument. To the extent that the government stated during closing argument that the evidence "can be used to show absence of mistake," the government immediately made a propensity argument: "meaning that it wasn't any mistake that he went to grab that knife and drive it in his brother's heart because you see, knife is his choice of weapons, and stabbing is his choice of attack. That's his mode of attack." (App. at 1320.) And, when the government was finally confronted with an objection to this evidence and required to articulate a basis for its admission before the jury, the government stated that "this is rebuttal and it's 404(b) which is to rebut testimony of the *defendant that he never stabbed his brother [Nonceba], that he doesn't know what his brother [Nonceba] is talking about, and only one brother has even been stabbed,*" not to rebut Prince's explanation of

1

reversed.

Like the evidence in *U.S. v. Moore*, 375 F.3d 259, 263-64 (3d Cir. 2004), admission of the Nonceba stabbing wholly fails this Court's four-factor standard governing admissibility of Rule 404(b) evidence: (1) there is no proper evidentiary purpose, (2) the evidence is irrelevant under Rule 402, (3) the evidence's prejudicial effect far outweighs its probative value, and (4) the trial court did not give a limiting instruction. *See U.S. v. Butch*, 256 F.3d 171, 175 (3d Cir. 2001). In *Moore*, the defendant was tried for arson and possession of a firearm by a convicted felon. Testimony that defendant had a violent relationship with his ex-girlfriend, used drugs habitually, beat his girlfriend's son, and threw his girlfriend down a flight of stairs did not have a permissible 404(b) purpose, "was highly prejudicial and wholly irrelevant," and affected the defendant's substantial rights. *Id.* at 265. Its admission was plain error, requiring reversal.

Here, like in *Moore*, the evidence that defendant stabbed another individual, years earlier and under different circumstances, is a completely separate and unrelated act from the charged crime. The acts are not unified by an overarching scheme and are even further in temporal proximity than the acts in *Moore*. The argument that the evidence shows an absence of mistake or intent in the charged act because both the prior act and the charged act involved knives relies on the impermissible character inference that defendant has a propensity to use knives for acts of violence. While this inference might be permissible to show identity in some cases, identity was not at issue in this case.

---

accident or mistake.

Furthermore, unlike in *Gov't of the V.I. v. Harris*, 938 F.2d 401, 420 (3d Cir. 1991), relied on by the majority, where the defendant was tried for his wife's murder and the permissibly-admitted Rule 404(b) evidence was acts of violence against his wife, defendant was not on trial for an act committed against Nonceba Prince. In *Harris*, evidence that the defendant attempted to stab and strangle his wife in the past showed his intent to murder her, regardless of whether a fact-finder inferred that the defendant had a propensity for violence. Here, without drawing the impermissible inference that defendant has a propensity to use knives or is a violent person, evidence of the Nonceba stabbing does not show intent, absence of mistake, or any other relevant Rule 404(b) purpose. The evidence of the Nonceba stabbing "came in for one reason and one reason only: to demonstrate [defendant's] propensity to act in a particular manner, i.e., to be a very violent man, whose violence made the [commission of the charged crime] more likely." *Moore*, 375 F.3d at 264.

In addition to not being probative of a relevant and permissible Rule 404(b) purpose, the evidence is highly prejudicial. That both acts involved the same weapon invites the impermissible propensity inference more strongly than if the defendant had used different weapons. Furthermore, Nonceba's rebuttal testimony went well-beyond the fact of the prior stabbing. The testimony that the prior stabbing happened seemingly unprovoked and while Nonceba was in bed portrays defendant as savagely violent and premeditative. Undue prejudice is compounded by the lack of a limiting instruction and the government's comment regarding the evidence during closing argument.

The evidence was admitted in error. And it is not "highly probable" that the error did not contribute to the judgment. *Id.* at 265. As such, the error in admitting evidence of the prior stabbing affected defendant's substantial rights.

For the foregoing, the admission of the evidence constituted plain error. Consequently, I respectfully dissent. I would reverse the judgment of conviction and remand for a new trial.