NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-1940

_____

UNITED STATES OF AMERICA

v.

ATTICUS SLITER-MATIAS,
                                            Appellant

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal Action No. 2-17-cr-00034-001)
District Judge: Honorable Billy Roy Wilson

_____

Submitted under Third Circuit LAR 34.1(a)
On December 13, 2019

Before: RESTREPO, ROTH and FISHER, Circuit Judges

(Opinion filed: December 2, 2020)

_____

OPINION*

_____

ROTH, Circuit Judge

---

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Atticus Sliter-Matias was convicted of two counts of mail fraud. He challenges his conviction on three grounds, all of which we reject for the reasons that follow.

I.[1]

Using fake names and addresses, Sliter-Matias created thousands of accounts on eBay and PayPal referred to as "stealth accounts."[2] He paired each stealth eBay account with a stealth PayPal account, assigning each pair a unique IP address and e-mail account. Roughly 161 of the stealth eBay accounts he created were involved in fraudulent transactions. In each of these fraudulent transactions he would post an item for sale through one of his eBay accounts. Once a buyer had been confirmed, he would provide a tracking number to the buyer for a shipment within the buyer's zip code or mark the item shipped on eBay to prompt eBay to release the buyer's purchase funds to the paired PayPal account. Using those funds, he would purchase items, including gold and silver, and ship them to himself. However, instead of the purchased item, the eBay buyer would receive only a torn or empty envelope from Sliter-Matias, sent through his Click-N-Ship account with the United States Postal Service. By the time the buyer reported the fraud, there would be no funds in Sliter-Matias's account to refund to the buyer, so eBay or PayPal would reimburse the buyer themselves. eBay and PayPal lost over $110,000 from these fraudulent transactions. On July 5, 2016, the United States Postal Inspectors executed a search warrant at Sliter-Matias's home address. Sliter-

---

[1] We write primarily for the parties who are familiar with the facts and the record, which we recite only as necessary to explain our decision.
[2] App. 655–58, 692.

Matias initially declined to be interviewed. Later when he asked to be interviewed, he claimed that he created eBay accounts with fake names and addresses to sell laptops, that the gold and silver found in his bedroom closet were his mother's retirement assets, and that he sent packages through his Click-N-Ship account for his employer. The Postal Inspectors collected a number of documents from his residence during this search. A significant portion of these documents were lost in transit. Sliter-Matias was ultimately charged with two counts of mail fraud under 18 U.S.C. § 1341.

At trial, Sliter-Matias denied being involved in the fraudulent transactions. He claimed that he created the stealth accounts to sell to eBay users who wanted to circumvent the limit eBay places on the number of sales a user can make each week and that he was compensated for his stealth accounts, sometimes in the form of gold and silver. He also claimed that he sent the empty or torn packages through his Click-N-Ship account to test the stealth accounts and make sure they would work.

Evidence presented at trial indicated that Sliter-Matias maintained a spreadsheet monitoring each fraudulent transaction involving the stealth accounts, that Sliter-Matias was the one who mailed torn or empty envelopes to the buyers after they paid for their purchases, and that the funds released to the stealth accounts were used only on purchases for Sliter-Matias. There was no evidence to suggest that his alleged employer ever existed or that Sliter-Matias ever communicated with anyone regarding the sale of his stealth accounts.

After a five-day trial, the jury returned a guilty verdict on both counts. The District Court sentenced him to a term of 46 months with 36 months of supervised release. His appeal followed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over the appeal from the District Court's final judgment under 28 U.S.C. § 1291. Sliter-Matias challenges his conviction on three grounds, each subject to a different standard of review.

## A.

First, Sliter-Matias argues that the evidence presented at trial was insufficient to sustain his convictions. In reviewing challenges to the sufficiency of the evidence, we employ a "highly deferential" standard to determine whether there was sufficient evidence, viewed in the light most favorable to the prosecution, for any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt.[3]

A conviction for mail fraud under 18 U.S.C. § 1341 requires three elements to be proven: "(1) a scheme or artifice to defraud by means of a materially false or fraudulent pretense; (2) participation by the defendant with specific intent to defraud; and (3) use of the mail in furtherance of the scheme."[4] Sliter-Matias challenges the sufficiency of the evidence only with respect to the second element. That element requires the prosecution

---

[3] *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424–25, 430 (3d Cir. 2013) (en banc); *United States v. Silveus*, 542 F.3d 993, 1002 (3d Cir. 2008).

[4] *United States v. Bryant*, 655 F.3d 232, 248 (3d Cir. 2011).

to demonstrate not "merely that a defendant participated in a fraudulent scheme," but that the defendant "did so knowingly and in furtherance of the illicit enterprise."[5] In Sliter-Matias's view, the government failed to produce certain proof, for example, evidence connecting him to the images and advertisements for the items for sale and evidence of his communications with his victims. He contends that this failure left the jury to speculate in its fact-finding role, with no reliable evidence upon which to reasonably reach a verdict of guilty. We disagree.

At trial, the government presented strong evidence establishing that Sliter-Matias knowingly participated in the fraudulent transactions and acted to further them. Sliter-Matias admitted to maintaining a spreadsheet listing the details of every fraudulent transaction involving the stealth accounts, including the eBay item number, the sale price, the name of the buyer, and the status of each transaction. Sliter-Matias also admitted that he was the one who shipped the torn or empty envelopes to the buyers. In addition, the funds acquired from the fraudulent transactions were used only for his benefit, and they were all spent immediately after they were released to PayPal accounts he created.

Viewed in the light most favorable to the government, the evidence presented permits a rational trier of fact to find beyond a reasonable doubt that Sliter-Matias was

---

[5] *United States v. Dobson*, 419 F.3d 231, 237 (3d Cir. 2005) (internal quotation marks omitted); *see also United States v. Pearlstein*, 576 F.2d 531, 537 (3d Cir. 1978) (explaining that specific intent under the mail fraud statute requires the defendant to "have devised the fraudulent scheme" or "wilfully participated in it with knowledge of its fraudulent nature").

the sole participant in this scheme and knew that he was being paid for items the buyers would never receive.  We therefore reject his sufficiency-of-the-evidence challenge.[6]

B.

Second, Sliter-Matias argues that the government violated his Fifth Amendment right against self-incrimination by introducing testimony at trial that noted his initial invocation of that right to the Postal Inspectors.  Since he did not timely object to the relevant testimony, we review the District Court's admission of that testimony for plain error.[7]  To establish plain error, a defendant must show "that (1) there was an error, (2) the error was 'clear or obvious,' and (3) the error 'affected [his] substantial rights.'"[8]

Sliter-Matias argues that the District Court plainly erred in permitting the following testimony in violation of his right against self-incrimination:

> Q.  Postal Inspector Weckerly, during the search of the residence, did the defendant agree to be interviewed?
> A.  Initially, he did not, but later during our search, he initiated contact with law enforcement and agreed to be interviewed.
> Q.  When you say "he initiated contact," he asked to talk to you guys?
> A.  Correct.
> Q.  Who interviewed him?
> A.  Myself and Postal Inspector Mike Adams.
> Q.  And was he provided his what we call Miranda warnings?
> A.  He was. In both instances both when he declined to speak with us and later when he said that he did want to speak with us, he was provided his rights both times, you know, the right to remain silent, the right to an attorney, that he could

---

[6] *See United States v. Lacerda*, 958 F.3d 196, 225–26 (3d Cir. 2020) (holding there was sufficient evidence to establish that the defendant knowingly or intentionally participated in wire fraud where she was in a position to know fraud was being committed and took initiative to further it).

[7] *See United States v. Moore*, 375 F.3d 259, 262 (3d Cir. 2004).

[8] *United States v. Stinson*, 734 F.3d 180, 184 (3d Cir. 2013) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

stop the interview at any point. The first time, he did not waive those rights and the second time he did waive those rights and agreed to talk to us.[9]

In Sliter-Matias's view, this testimony served as evidence from which the jury could infer that he had delayed his interview so that he could fabricate his story.

We find no plain error in the District Court's admission of this testimony. The evidence at trial against Sliter-Matias was strong. Whether he invoked his right against self-incrimination would not have altered the fact that he created all of the stealth accounts in question, personally tracked all of the fraudulent transactions occurring through those accounts, was the sole beneficiary of those transactions, and repeatedly shipped empty or torn packages to buyers. Whether he invoked his right against self-incrimination would also not have altered the fact that he raised two theories of defense with no evidence to support either. His assertions that his substantial rights were affected fall short of the bar required to satisfy the third prong of plain error analysis.[10]

## C.

Finally, Sliter-Matias argues that the indictment should have been dismissed because the government's loss of potentially exculpatory records acquired from the search of his residence violated his right to due process. We employ a mixed standard of review over whether the District Court erred in refusing to dismiss an indictment,

---

[9] App. 596–97.

[10] *See United States v. Ludwikowski*, 944 F.3d 123, 136-37 (3d Cir. 2019) (holding that the defendant's substantial rights were not affected by the admission of certain testimony where the challenged testimony was unnecessary to establish guilt).

reviewing the District Court's legal conclusions de novo but reviewing its factual findings for clear error.[11]

In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[12]  Where evidence destroyed only "might have proved exculpatory," a defendant "has to show the prosecution's bad faith in ordering or permitting its destruction."[13]  Sliter-Matias does not allege that the government acted in bad faith in losing his belongings but argues that the existing standard creates a manifest injustice.  He asks us to apply a different standard to dismiss the case in his favor.  We are not, however, free to ignore Supreme Court precedent and accordingly must reject this argument.[14]

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[11] *United States v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011).
[12] 373 U.S. 83, 87 (1963).
[13] *United States v. Deaner*, 1 F.3d 192, 200 (3d Cir. 1993) (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)).
[14] *See Lambert v. Blackwell*, 387 F.3d 210, 267 (3d Cir. 2004) (rejecting the defendant's claim that the government violated the Constitution by failing to preserve certain evidence where the defendant produced no evidence of bad faith).